[No. 17749.   Department Two.   February 3, 1923.]

JOHN M. CARLSEN, *Appellant,* v. E. C. COONEY,
*Respondent.*[1]

CARRIERS (1)—REGULATION—CERTIFICATES OF PUBLIC NECESSITY—
SCOPE AND EFFECT—RIGHTS OF PRIVATE CARRIERS—STATUTES—CON-
STRUCTION.   The hauling of goods without obtaining a certificate of
public necessity, by motor vehicles not regularly operating between
fixed termini or over regular routes, is not prohibited by the Act of
1921 (Rem. Comp. Stat., § 6386 *et seq.*), regulating motor vehicle
transportation for hire, notwithstanding § 6388 provides that no
person shall operate such vehicles for hire "except in accordance
with this act"; in view of §6390, which requires certificates of public
necessity only for vehicles operating "between fixed termini or over
regular routes," and Id., § 6397, providing that the act shall not re-
peal any existing laws relating to motor propelled vehicles, plainly
referring to the general license and regulatory act, Id., § 6312 *et seq.*

Appeal from a judgment of the superior court for
Pierce county, Chapman, J., entered December 15, 1922,
dismissing an action for damages and for an injunc-
tion, after a trial to the court upon an agreed state-
ment of facts.   Affirmed.

*Vance & Christensen* and *Remann & Gordon,* for ap-
pellant.

*Burkey, O'Brien & Burkey,* for respondent.

PARKER, J.—The plaintiff, Carlsen, is the proprietor
and operator of a freight service by motor propelled
vehicles over the highways of this state between Ta-
coma; Camp Lewis, Dupont and Cady's Camp, between
fixed termini and over a regular route, under a cer-
tificate of necessity duly issued to him by the depart-
ment of public works of this state under ch. 111, Laws
of 1921, p. 338 (Rem. Comp. Stat., § 6387).   The de-
fendant, Cooney, is the proprietor and operator of a

[1] Reported in 212 Pac. 575.

storage and transfer business, having his office and principal place of business in Tacoma. He has not operated his motor propelled trucks in hauling the goods of his customers between fixed termini, nor over any regular route. He does not have any certificate of necessity under ch. 111, Laws of 1921, *supra,* but has in all respects complied with ch. 96, Laws of 1921, p. 251 (Rem. Comp. Stat., § 6312), relating generally to the licensing of motor vehicles; that is, his motor trucks are all duly licensed for use upon the public highways of this state under that law. The plaintiff commenced an action in the superior court for Pierce county, seeking an injunction restraining the defendant from hauling goods for compensation over any part of the regular route of the plaintiff's freight service operated under his certificate of necessity issued by the department of public works. The cause being submitted to the superior court upon an agreed statement of facts duly certified by the trial judge as containing all of the material facts in the case, judgment was rendered by that court denying to the plaintiff the relief prayed for, from which he has appealed to this court.

In view of our conclusion as to what the legal rights of the defendant are in this case, it hardly seems necessary to notice the facts other than as above stated. We may further observe, however, that it clearly appears from the agreed statement as follows: Defendant has never at any time operated any of his motor trucks for compensation between fixed termini or over a regular route, so as to call for the obtaining of a certificate of necessity authorizing him so to do under ch. 111, Laws of 1921, *supra.* His particular act, which apparently became the cause of the commencement of this action by the plaintiff, consisted of hauling a large

quantity of boots and shoes from Camp Lewis to Tacoma over a portion of plaintiff's regular route. This was done in pursuance of a special hauling contract entered into by defendant with a Tacoma mercantile concern which had purchased the boots and shoes from the United States government. It is not claimed that the carrying out of this hauling contract by defendant amounted to his operating his motor trucks between fixed termini or over a regular route, within the meaning of ch. 111, Laws of 1921. Plaintiff was able, with equipment at his command, to have hauled the boots and shoes from Camp Lewis to Tacoma over his regular route, and stood ready and willing to do so; and we may concede for present purposes that he would have earned whatever profit that might have resulted from such hauling, had defendant been prevented from doing it.

It seems to be conceded, and we shall assume for present purposes, that if defendant has not the lawful right to render any carrying services to his customers, of the nature rendered by him as above noticed, over any portion of plaintiff's regular route, then plaintiff is entitled to the injunctive relief he here seeks. Our problem thus becomes solely one of the construction of ch. 111, Laws of 1921, *supra,* relating to transportation by motor vehicles over the highways of this state; read, as we think, in the light of ch. 96, Laws of 1921, p. 251, relating generally to the licensing of motor vehicles for use upon the highways of the state. The passage of these two acts were subjects of consideration by the legislature of 1921, substantially at the same time. While ch. 111 was the first to receive the affirmative vote of one branch of the legislature, it received the final affirmative vote of the legislature two days later, and the approval of the governor one day later.

Chapter 96, Laws of 1921, p. 251 (Rem. Comp. Stat., § 6312), provides generally for the licensing of all motor vehicles to be used on the highways of the state, and when a license is granted for the operation of a motor vehicle under that law, whether for the carrying of its owner and others he may choose to carry, for or without compensation, or whether for carrying goods of its owner or goods of others which he may choose to carry, for or without compensation, such vehicle may be lawfully operated by the owner, or anyone for him, for either of such purposes upon any of the highways of the state, in so far as we are concerned with such operation in our present inquiry, except in so far as such operation may be prohibited or restricted by the provisions of ch. 111, Laws of 1921. The title and provisions of that act, in so far as we need here notice them, are as follows:

"An Act providing for the additional supervision and regulation of the transportation of persons, and property for compensation over any public highway by motor propelled vehicle: Defining transportation companies and providing for additional supervision and regulation thereof by the public service commission, . . . . .

"Section 1. . . . . .

"(d) The term 'Auto transportation company' when used in this act means every corporation or person, their lessees, trustees, receivers or trustees appointed by any court, whatsoever, owning, controlling, operating or managing any motor propelled vehicle not usually operated on or over rails used in the business of transporting persons, and, or, property for compensation over any public highway in this state between fixed termini or over a regular route, and not operating exclusively within the incorporated limits of any city or town; *Provided,* That the term 'auto transportation company,' as used in this act, shall not include corporations or persons, their lessees, trustees, receivers or trustees appointed by any court whatsoever, insofar as

they own, control, operate or manage taxicabs, hotel busses, school busses, motor propelled vehicles, operated exclusively in transporting agricultural, horticultural, or dairy or other farm products from the point of production to the market, or any other carrier which does not come within the term "auto transportation company" as herein defined.

"(e) The term 'public highway' when used in this act means every street, road, or highway in this state.

"(f) The words 'between fixed termini or over a regular route,' when used in this act, mean the termini or route between or over which any auto transportation company usually or ordinarily operates any motor propelled vehicle, even though there may be departures from said termini or route, whether such departures be periodic or irregular. . . . ." Rem. Comp. Stat., § 6386.

"Sec. 2. No corporation or person, their lessees, trustees, receivers or trustees appointed by any court whatsoever, shall operate any motor propelled vehicle for the transportation of persons, and, or, property, for compensation on any public highway in this state, except in accordance with the provisions of this act. . . . ." Rem. Comp. Stat., § 6388.

"Sec. 4. No auto transportation company shall hereafter operate for the transportation of persons and, or, property for compensation between fixed termini or over a regular route in this state, without first having obtained from the Commission under the provisions of this act a certificate declaring that public convenience and necessity require such operation; . . . ." Rem. Comp. Stat., § 6390.

Other provisions of that act relate to the fees to be paid to the state by certificate holders, the furnishing of liability and property damage insurance by certificate holders, hearings, penalties, etc. None of such other provisions, however, have anything to do with or even suggest any regulation of the use of motor propelled vehicles other than those operated ". . . .

for compensation between fixed termini or over a regular route, . . . ."

The act concludes with these words:

"Sec. 11. This act shall not repeal any of the existing law or laws, relating to motor propelled vehicles, their owners or operators, or requiring compliance with any condition for their operation." Rem. Comp. Stat., § 6397.

These concluding words manifestly have reference to ch. 96, approved by the governor one day prior to his approval of this act.

Counsel for plaintiff seem to rest their argument against defendant's claimed right to operate his motor trucks over the public highways as he is operating them wholly upon the provisions of § 2, ch. 111, Laws of 1921, p. 339 (Rem. Comp. Stat., 6388), above quoted. Indeed, we would be at a loss to see what other possible ground of support their argument could have. If the language of that section stood alone, and the exception therein be ignored, it would, indeed, be difficult to escape the conclusion that it meant what counsel for plaintiff contends for, startling as such an expression of legislative intent would seem to be. If that section means in its present setting all that is claimed for it by counsel for plaintiff, then it means that nowhere upon the public highways of our state can a person, not engaged in hauling between fixed termini or over a regular route, haul in his motor vehicle any property of another for compensation, however special his contract for such hauling, or however casual such hauling might be. A farmer having an automobile could not lawfully haul for compensation for his neighbor goods from town to his neighbor's home which the latter might have occasion to have so hauled. One owning a motor truck, not engaged in the business which ch. 111 purports to regulate, could not lawfully haul wood in

such truck for compensation on any portion of any public highway of this state. The humble expressman and drayman, so commonly in business in and about our towns and cities, could not, with his little automobile truck, lawfully haul for another for compensation; all simply because this seemingly far-reaching provision of § 2, of ch. 111, in terms so declares, when read apart from any thought of the real purpose of the act.

We do not lose sight of the fact that it is only the restraining of defendant from hauling over plaintiff's regular route which is here sought to be enjoined, but plainly we think all arguments which can be brought forward in support of such relief would be equally effective in support of a contention that the hauling here sought to be enjoined would be unlawful were it done over some remote, out-of-the-way highway of the state far from where anyone is engaged in hauling between fixed termini or over a regular route under a certificate issued to him in pursuance of ch. 111. The fact that plaintiff will suffer, in some measure, loss of profits in his business, if defendant is permitted to occasionally haul over plaintiff's regular route, is of consequence here little beyond plaintiff's right to personally sue and seek the relief he does in this action. Plaintiff's ultimate right to have such relief awarded to him must in the end rest upon the unlawfulness of defendant's acts in casually hauling by motor vehicle for compensation over any of the highways of the state. If it is unlawful for defendant to so haul over a portion of plaintiff's regular route, it is, we think, manifestly unlawful for defendant to so haul over any portion of any other highway of the state. We are not ready to attribute to the legislature an intent to so restrict defendant in the use of his motor trucks by

the passage of that act, if it is possible to avoid doing so; which we think it is.

Looking to the language of the title of the act, it seems plain to us that it evidences an intent to regulate rather than prohibit; and when we look to the whole of the body of the act with a view of harmonizing its provisions with what seems so clearly expressed in its title, we are prone to believe that the legislature intended nothing more than to provide for the regulation of the transportation business by motor propelled vehicles over the public highways of the state ''between fixed termini or over regular routes''; and that the prohibition contained in § 2 of the act means nothing more than a prohibition against the operation of motor propelled vehicles for compensation between fixed termini or over regular routes, except in accordance with the provisions of the act.

We do not overlook the exceptions found in the proviso of subdivision d of § 1 of the act, which, in terms, excepts from the definition of auto transportation companies, taxicabs, hotel busses, school busses and motor vehicles operated in transporting agricultural products. Save as to taxicabs, all of these exceptions can well be considered as referring to motor vehicles of the excepted classes engaged in such transportation between fixed termini or over regular routes. Probably such view of the exception of taxicabs would hardly be sound. Shall we say then that the exception of taxicabs, they being vehicles which are usually not operated over regular routes, necessarily excludes exceptions of all vehicles operated for compensation over our highways, other than those which are operated between fixed termini or over regular routes? As a matter of cold logic, there does seem to be room for arguing that such exception of taxicabs does ex-

clude all other exceptions as to motor vehicles not operated between fixed termini or over regular routes; but viewing the act as a whole and having in mind its manifest purpose, evidenced not only by the title of the act, but the general provisions to be found in its body and the rights given to owners of licensed motor vehicles under ch. 96, which act we think must be read in connection with ch. 111, in order to sense the full meaning of the latter, we cannot escape the conclusion that the provisions of § 2, of ch. 111, are not controlling in the sense contended for by counsel for defendant.

We conclude that the judgment must be affirmed, and it is so ordered.

TOLMAN and PEMBERTON, JJ., concur.

MAIN, C. J. (concurring)—I concur in the result of the foregoing opinion upon the ground that the respondent had the right, by special contract and on particular occasions, to haul goods over a portion of the route which was between the fixed termini over which the appellant operated.