[No. 17540. *En Banc.* February 15, 1923.]

# Northern Pacific Railway Company et al., *Appellants,* v. A. M. Schoenfeldt et al., *Respondents.*[1]

Carriers (11)—Regulation—Police Power. Regulation of the use of highways in carrying on a business for private gain is a valid exercise of the police power.

Carriers (3)—Commerce (1, 3)—Power of State to Regulate Interstate Commerce on Highways. The enforcement of the auto transportation act, Rem. Comp. Stat., § 6387 *et seq.*, regulating motor vehicles for hire, against persons carrying passengers for hire from a point in this state to points in another state, is not an unlawful restriction upon interstate commerce, in violation of Federal Constitution, Art. 1, § 8, Cl. 3; since it is competent, under the police power, in the absence of national legislation, for a state to make regulations for good order and public safety, and to exact reasonable compensation for special facilities afforded, and since the act is not a prohibition of or a direct burden on interstate commerce.

Same. Rem. Comp. Stat., § 6394, providing that the auto transportation act shall not apply to commerce among the several states except so far as the same may be permitted under the constitution and acts of Congress, does not militate against the above rule, and is prospective only, with a view to possible future assertion of regulation and control by Congress.

Carriers (3-2)—Regulation of Highway Traffic by Carriers—Proceedings to Enforce. Resort to the Department of Public Works is not a prerequisite to an action for an injunction, sought by a railroad company engaged in interstate commerce and suffering loss by the unlawful competition of motor vehicles which failed to make any application for a certificate of public necessity from the director of public works and obtain a permit to engage in such business.

Appeal from a judgment of the superior court for King county, Griffiths, J., entered August 16, 1922, upon sustaining a demurrer to the complaint, dismissing an action for an injunction and for damages. Reversed.

[1] Reported in 213 Pac. 26.

*Geo T. Reid, C. H. Winders,* and *L. B. da Ponte,* for appellant Northern Pacific Railway Company.

*Thomas Balmer,* for appellant Great Northern Railway Company.

*A. C. Spencer,* for appellant Oregon-Washington Railroad and Navigation Company.

*W. R. Crawford,* for respondents.

*Vance & Christensen, amici curiae.*

Tolman, J.—Appellants began this action in the court below by filing a complaint against the respondent as defendant, alleging that the three appellant railway companies are operating passenger trains between the cities of Seattle and Tacoma, in the state of Washington, over a railroad belonging to the Northern Pacific Railway Company, carrying many hundreds of passengers daily in both directions, and connecting with other carriers so as to give through service between cities of this state and points in Oregon and California. They complain that the respondent began in March, 1922, the business of operating motor vehicles for the carriage of passengers over and upon the public highways of the state of Washington, closely paralleling appellants' railroad from Seattle and Tacoma to Portland, and thence to California points; that the Pacific Highway, over which the respondent operates, is one of the public highways of the state of Washington, constructed by the state at an expense of several millions of dollars; that respondent advertises in the daily papers for business and is actively engaged in soliciting passengers for transportation over the highway and between the points mentioned. It is charged in the complaint that respondent has been, and now is, operating motor vehicles for the carrying of passengers for hire over a regular route between fixed

termini, and has carried many passengers. over the route mentioned, thereby entering into competition with, and is now competing with, and will continue to compete with, the appellants in the matter of transporting passengers between points in this state and points in Oregon and California, and thereby has deprived, and will continue to deprive, appellants of large sums of money which they would otherwise have earned, and would in the future earn, in the passenger traffic over their railroad between the points mentioned.

It is further alleged that the Pacific Highway, over which respondent operates, crosses appellants' railroad between Seattle and the Columbia river in this state at many points, and that respondent is operating over such crossings without any regulation, and does and will habitually disregard all reasonable safety precautions, thus exposing appellants' trains to the danger of collision with respondent's motor vehicles, with the attendant danger of loss which might accrue through the damage to property and injury to passengers, for which the appellants would be liable.

It is further alleged that the respondent has not complied with, or made any attempt to comply with, the provisions of ch. 111 of the Laws of 1921, p. 338 (Rem. Comp. Stat., § 6387), and is operating over the public highways of this state as an auto transportation company, as defined by such act, between fixed termini and over a regular route, without having obtained, or attempted to obtain, a certificate of convenience and necessity as prescribed by § 4 of such act; without having executed a bond as required by § 5, and without having paid the fees prescribed by § 9; but, upon the contrary, respondent is operating in defiance of such act in every particular, and such operations are a

public nuisance and an unlawful obstruction of the public highways, all to the great damage of appellants.

It is further alleged that there is no public necessity for the service being supplied by respondent, and the prayer of the complaint is that respondent be enjoined from operating motor vehicles in the manner described in competition with the appellants, and that they recover the financial loss sustained on account of the alleged unlawful competition.

To this complaint a demurrer was entered, raising the points that the court has no jurisdiction over the subject-matter of the action, and that the complaint does not state facts sufficient to constitute a cause of action. The demurrer being sustained by the trial court, this appeal followed.

The first and most important question to be decided is whether or not the business conducted by respondent is one which is within the power of the state to regulate, prohibit or burden; and, if so, whether the act in question is such a regulation as is prohibited by the Federal constitution.

The act is entitled:

"An act providing for the additional supervision and regulation of the transportation of persons, and property for compensation over any public highway by motor propelled vehicle: Defining transportation companies and providing for additional supervision and regulation thereof by the public service commission, providing for the enforcement of the provisions of this act and for the punishment of the violations thereof."

Subdivision (d) of § 1, defines auto transportation companies as follows:

"The term 'Auto Transportation Company' when used in this act means every corporation or person, their lessees, trustees, receivers or trustees appointed by any court whatsoever, owning, controlling, operat-

ing or managing any motor propelled vehicle not usually operated on or over rails used in the business of transporting persons, and, or, property for compensation over any public highway in this state between fixed termini or over a regular route, and not operating exclusively within the incorporated limits of any city or town." Rem. Comp. Stat., § 6387.

Section 2 provides:

"No corporation or person, their lessees, trustees, receivers or trustees appointed by any court whatsoever, shall operate any motor propelled vehicle for the transportation of persons, and, or, property for compensation on any public highway in this state, except in accordance with the provisions of this act." Rem. Comp. Stat., § 6388.

Section 3 gives to the public service commission, now the department of public works, full power of supervision and regulation, and power to prescribe rules and regulations and the like.

In § 4 it is provided:

"No Auto Transportation Company shall hereafter operate for the transportation of persons and, or, property for compensation between fixed termini or over a regular route in this state, without first having obtained from the Commission under the provisions of this act a certificate declaring that public convenience and necessity require such operation." Rem. Comp. Stat., § 6390.

Section 5 directs every such owner to furnish liability and property damage insurance for each vehicle to be operated.

Sections 6 and 7 provide for the review of the decisions of the commission, and make any violation of the act a gross misdemeanor.

Section 8 provides:

"Neither this act nor any provision thereof shall apply or be construed to apply to commerce with

foreign nations or commerce among the several states of the Union except in so far as the same may be permitted under the provisions of the Constitution of the United States and the Acts of Congress." Rem. Comp. Stat., § 6394.

Section 9 fixes the fees to be paid.

Respondent contends that the enforcement of these provisions will violate the letter and spirit of art. I, § 8, clause 3, of the Federal constitution, which expressly commits to Congress, and impliedly withholds from the several states, the power to regulate commerce among the states.

It may be conceded that the transportation of passengers from a point within this state to a point without the state, and *vice versa,* is interstate in its nature; but it by no means follows therefrom that such a business is for that reason free from all state regulation. The true rule, well sustained by the authorities, is stated in 12 C. J. 12, as follows:

"It is without the power of a state directly to regulate, prohibit, or burden interstate commerce, or rights flowing proximately therefrom. To come within the rule, the interference with interstate commerce must be direct and substantial, and not merely incidental. The states may, as long as they do no more than legitimately exercise their reserved police power, enact laws which will be valid although they may incidentally affect interstate commerce. Local laws of the character mentioned have their source in the powers which the states reserved and never surrendered to Congress, of providing for the public health, the public morals, and the public safety, and are not, within the meaning of the constitution, and considered in their own nature regulations of interstate commerce. Indeed, it is held in some cases that all state legislation regulating or affecting interstate commerce must, in order to be valid, be enacted in pursuance of the police powers of the state. However, to be valid, a state regulation

affecting interstate commerce must be a real exercise of the police power and not a mere cover for a palpable evasion of the commerce clause of the United States Constitution; and the mere fact of the enactment of a statute under state authority is not conclusive that it is an exercise of the police power, or an attempted restriction of interstate commerce, but such question must be determined by the authority of the United States, the reasonableness of the state's action being always subject to inquiry so far as it affects interstate commerce. Also, a police regulation going beyond the necessities of the case and interfering with interstate commerce is void.

"Legislation which is a mere aid to commerce may be enacted by a state, although at the same time it may incidentally affect commerce itself."

The purpose of the act under consideration is clearly apparent from its title and contents, and that purpose is to regulate the use of the highways of the state by those engaged in carrying on business thereon for their own private gain, whether engaged in interstate or intrastate commerce, and it applies alike to each class without discrimination.

We have repeatedly held that the legislature may regulate the use of the highways for carrying on business for private gain, and that such regulation is a valid exercise of the police power. *State v. Seattle Taxicab & Transfer Co.,* 90 Wash. 416, 156 Pac. 837; *Allen v. Bellingham,* 95 Wash. 12, 165 Pac. 18; *Hadfield v. Lundin,* 98 Wash. 657, 168 Pac. 516, Ann. Cas. 1918C 942; and *State ex rel. Schafer v. Spokane,* 109 Wash. 360, 186 Pac. 864.

In the *Hadfield* case, *supra,* it is well said:

"The streets and highways belong to the public. They are built and maintained at public expense for the use of the general public in the ordinary and customary manner. The state, and the city as an arm of

the state, has absolute control of the streets in the interest of the public. No private individual or corporation has a right to the use of the streets in the prosecution of the business of a common carrier for private gain without the consent of the state, nor except upon the terms and conditions prescribed by the state or municipality, as the case may be. The use of the streets as a place of business or as a main instrumentality of business is accorded as a mere privilege and not as a matter of natural right.''

We therefore hold that the act in question is a valid police regulation and as such is binding upon all who use the highways for the purpose of private gain, unless it is a constitutional burden upon those engaged in interstate commerce.

That the state may not directly tax interstate commerce, prohibit it, or place a direct and undue burden upon it, is well established. *Robbins v. Shelby County Taxing District*, 120 U. S. 489; *Minnesota v. Barber*, 136 U. S. 313; *Brennan v. City of Titusville*, 153 U. S. 289; *Norfolk & Western R. Co. v. West Virginia*, 236 U. S. 605; *United Fuel Gas Co. v. Hallanan*, 257 U. S. 277; *Lemke v. Farmers Grain Co.*, 258 U. S. 50. But as said by Mr. Justice Hughes in the *Minnesota Rate Cases*, 230 U. S. 352-402:

''But within these limitations there necessarily remains to the states, until Congress acts, a wide range for the permissible exercise of power appropriate to their territorial jurisdiction although interstate commerce may be affected. It extends to those matters of a local nature as to which it is impossible to derive from the constitutional grant an intention that they should go uncontrolled pending Federal intervention. Thus, there are certain subjects having the most obvious and direct relation to interstate commerce, which nevertheless, with the acquiescence of Congress, have been controlled by state legislation from the foundation of the Government because of the necessity

that they should not remain unregulated and that their regulation should be adapted to the varying local exigencies; hence, the absence of regulation by Congress in such matters has not imported that there should be no restriction but rather that the states should continue to supply the needed rules until Congress should decide to supersede them. Further, it is competent for a state to govern its internal commerce, to provide local improvements, to create and regulate local facilities, to adopt protective measures of a reasonable character in the interest of health, safety, morals and welfare of its people, although interstate commerce may incidentally or indirectly be involved."

In harmony with this doctrine the United States supreme court, in *Hendrick v. State of Maryland,* 235 U. S. 610, deciding a question in most of its practical features like the one we are now discussing, said:

"The movement of motor vehicles over the highways is attended by constant and serious dangers to the public, and is also abnormally destructive to the ways themselves. Their success depends on good roads the construction and maintenance of which are exceedingly expensive; and in recent years insistent demands have been made upon the states for better facilities, especially by the ever-increasing number of those who own such vehicles. As is well known, in order to meet this demand and accommodate the growing traffic the State of Maryland has built and is maintaining a system of improved roadways. Primarily for the enforcement of good order and the protection of those within its own jurisdiction the state put into effect the above-described general regulations, including requirements for registration and licenses. A further evident purpose was to secure some compensation for the use of facilities provided at great cost from the class for whose needs they are essential and whose operations over them are peculiarly injurious.

"In the absence of national legislation covering the subject a state may rightfully prescribe uniform regulations necessary for public safety and order in respect

to the operation upon its highways of all motor vehicles
—those moving in interstate commerce as well as
others.   And to this end it may require the registra-
tion of such vehicles and the licensing of their drivers,
charging therefor reasonable fees graduated according
to the horse-power of the engines—a practical measure
of size, speed and difficulty of control.   This is but an
exercise of the police power uniformly recognized as
belonging to the states and essential to the preserva-
tion of health, safety and comfort of their citizens; and
it does not constitute a direct and material burden on
interstate commerce.''

And again, in *Kane v. State of New Jersey,* 242 U.
S. 160, it was said:

''The power of a state to regulate the use of motor
vehicles on its highways has been recently considered
by this court and broadly sustained.   It extends to
non-residents as well as residents.   It includes the
right to exact a reasonable compensation for special
facilities afforded as well as reasonable provisions to
ensure safety.   And it is properly exercised in impos-
ing a license fee graduated according to the horse-
power of the engine.   *Hendrick v. Maryland,* 235 U. S.
610.''

The supreme court of our sister state of Oregon has
recently reached a like conclusion in *Camas Stage Co.
v. Kozer,* 104 Ore. 600, 209 Pac. 95, and the United
States district court for the western district of Wash-
ington, in the recent case of *Interstate Motor Transit
Co. v. Kuykendall,* 284 Fed. 882, to which respondent
was a party, upheld this very act in a most convincing
opinion.

The act of 1921, to paraphrase the language of Mr.
Justice Hughes, above quoted, is a protective measure
of a reasonable character in the interest of the safety
and welfare of the people of this state—safety, because
by the terms of the act the highways may not be used
for private gain unless in the judgment of the depart-

ment of public works, after a full hearing, such use will tend to the convenience or serve the necessities of the public, and unnecessary congestion with its attendant dangers be thereby prevented. Welfare, because the highways are built and maintained at great expense and all traffic thereon is to some extent destructive, therefore the prevention of unnecessary duplication of auto transportation service will lengthen the life of the highways or reduce the cost of maintenance. The revenue to be derived by the state under the terms of the act will also tend toward the public welfare by producing, at the expense of those operating for private gain, some small part of the cost of repairing the wear and deterioration which they by their operations occasion.

We conclude that no feature of the act is a prohibition of, or a direct burden upon, interstate commerce.

But it is contended that § 8 of the act specifically includes such operations as are here shown. So far as it is necessary to construe that section, we think it clearly prospective, enacted with a view to a possible future time when Congress may assert its right to regulate and control such transportation; that it was inserted for the purpose of strengthening the act, and not to limit it, except as the courts might hold that Congress had by proper legislation assumed jurisdiction.

The other point raised by the demurrer is that the court has no jurisdiction of the subject-matter. The argument on behalf of the respondent is that complaint should first be made to the director of public works. This contention seems to be a contradiction of the whole course heretofore followed by the respondent in completely ignoring the act of the legislature, the director of public works, and the rules and regulations

of the department which he is required to enforce. The director of public works has not issued to the respondent any certificate or license capable of revocation, nor is this suit prosecuted primarily in the interests of the public, but it is a suit to protect the property rights and interests of the parties complaining. The unlawful acts of the respondent have resulted in depriving the appellants of the earnings and revenue which would otherwise have accrued to them, and this is an interference with their property which constitutes a damage to them specially. Discussing this same kind of a question in the case of *Puget Sound Tr., L. & P. Co. v. Grassmeyer*, 102 Wash. 482, 173 Pac. 504, L. R. A. 1918F 469, this court said:

". . : . to engage in any form of business in defiance of laws regulating or prohibiting the business is a nuisance *per se,* and a person so engaging therein may, in this jurisdiction, be enjoined from so doing by any one suffering a special injury thereby. (Citing cases). And such an action will lie even though there may be for the wrong committed the legal remedy of arrest and punishment. (Citing cases)."

To the same effect is *State ex rel. Seattle & Rainier Valley R. Co. v. Superior Court, ante* p. 116, 212 Pac. 259.

Reversed, with directions to overrule the demurrer.

MAIN, C. J., HOLCOMB, FULLERTON, PARKER, BRIDGES, and MACKINTOSH, JJ., concur.

MITCHELL, J. (concurring)—The act of 1921, among other things, provides in substance that no corporation or person shall operate any motor propelled vehicle for the transportation of persons or property for compensation on any public highway in this state except in accordance with the provisions of the act. It requires the commission, now known as the director of public

works, to regulate every automobile transportation company operating in this state and to fix, alter and amend rates and charges so that they shall be reasonable and sufficient, and prescribe rules and regulations for the safety of operations affecting the relationship between the automobile transportation company and the traveling and shipping public. It denies the right to operate for the transportation of persons or property between fixed termini or over a regular route in this state without first having obtained from the director of public works a certificate declaring that public convenience and necessity require such operation. It requires the owner or operator to first procure liability and property damage insurance or a surety bond on each vehicle in protection of the rights of persons and property. It provides for an annual minimum fee of ten dollars for each vehicle, and if the seating capacity of it exceeds eight persons, a further fee computed on the basis of fifty cents per passenger for such additional seating capacity. By its terms, all sums collected shall go through the state treasurer's office into the public service revolving fund. It provides that, if for any reason any section, sub-section, sentence, clause or phrase of the act shall be held invalid, such decision shall not affect the validity of the remaining portion of the act, and that the act shall not repeal any existing law or laws with relation to motor propelled vehicles.

Prior acts of the legislature, together with this one, provide a comprehensive system of highways, and for the supervision and regulation of motor vehicles operating thereon, primarily for the enforcement of order and the protection of persons and property, and, as stated in *Hendrick v. State of Maryland*, 235 U. S.

610, 59 L. Ed. 385, of a law of Maryland on this same subject:

"A further evident purpose was to secure some compensation for the use of facilities provided at great cost, from the class for whose needs they are essential and whose operations over them are peculiarly injurious."

The respondent contends that the act imposes an unwarranted burden on interstate commerce. On the contrary, the act, in § 8, specifically declares that it shall not apply to such commerce, except in so far as the same may be permitted under the provisions of the constitution of the United States and the acts of Congress. Manifestly the purpose of the law, as declared in its title, is supervision and regulation in behalf of the public welfare, with the added feature of reasonable fees somewhat by way of compensation for the costly construction and maintenance of the highways by the state. The assault made by the general demurrer calls in question not necessarily the combination of all the provisions of the act, but each and every one of them separately. Respondent's argument, however, proceeds upon the theory that if any one of the provisions of the act runs counter to its rights under the commerce clause of the Federal constitution, that for that reason the whole law is invalid and the complaint is bad. But the statute itself provides against that very result. The complaint alleges that the respondent has not complied with any of the provisions of the law or the rules and regulations of the department of public works adopted pursuant thereto as expressly authorized by the act, and is operating in total disregard of the law and the state's authorities. The general demurrer admits the charges, so that the province of the court in this case is not to determine if there is any

one feature of the law that is invalid under the Federal constitution, nor do I express the opinion that there is, but rather the question is to ascertain if any one or more of the substantial provisions of the act is without that objection. There is no question that such is the case. I rely on decisions of the supreme court of the United States. Maryland adopted a scheme for the supervision and regulation of motor vehicles on its highways. A resident of another state was arrested and prosecuted in Maryland for operating a motor vehicle on the highways of the state without having procured the certificate of registration required by the statute. One of the defendant's objections to the law was that it was an attempt on the part of the state to regulate interstate commerce. In disposing of the objection the court, in the case of *Hendrick v. State of Maryland,* cited in the majority opinion, said:

"The movement of motor vehicles over the highways is attended by constant and serious dangers to the public, and is also abnormally destructive to the ways themselves. Their success depends on good roads, the construction and maintenance of which are exceedingly expensive; and in recent years insistent demands have been made upon the states for better facilities, especially by the ever-increasing number of those who own such vehicles. . . .

"In the absence of national legislation covering the subject a state may rightfully prescribe uniform regulations necessary for public safety and order in respect to the operation upon its highways of all motor vehicles—those moving in interstate commerce as well as others. . . . This is but an exercise of the police power uniformly recognized as belonging to the states and essential to the preservation of the health safety and comfort of their citizens; and it does not constitute a direct and material burden on interstate commerce."

And in the later case of *Kane v. State of New Jersey*, 242 U. S. 160, 61 L. Ed. 222, the court said:

"The power of a State to regulate the use of motor vehicles on its highways has been recently considered by this court and broadly sustained. It extends to nonresidents as well as to residents. It includes the right to exact reasonable compensation for special facilities afforded as well as reasonable provisions to ensure safety. And it is properly exercised in imposing a license fee graduated according to the horse power of the engine. *Hendrick v. State of Maryland*, 235 U. S. 610."

These cases, as I understand, are authority for the validity of state statutes only when they are simply regulatory and when they neither prohibit nor impose an undue burden on interstate commerce.

That some of the provisions of the act are well within the regulatory rights and powers of the state, there can be no serious question; that some other may not be, it is unnecessary to decide in this case.

The majority opinion, in my opinion, properly disposes of the point presented by the demurrer that the court has no jurisdiction of the subject-matter.

For these reasons, I concur in the result arrived at in the majority opinion.

PEMBERTON, J., concurs with MITCHELL, J.