[No. 18230. Department One. November 8, 1923.]

W. A. DAVIS *et al., Appellants,* v. LANDON L. CLEVINGER, *Respondent.*[1]

CARRIERS (4)—REGULATION—STATUTES—CERTIFICATE OF PUBLIC NECESSITY. A mail carrier, operating between fixed termini without a certificate of public necessity, will be enjoined from habitually carrying passengers and freight, even though there is a claim that it was largely gratuitous and in the nature of neighborly acts, where it was constantly done for the purpose of injuring the business of a certificate holder.

Appeal from a judgment of the superior court for Lewis county, Reynolds, J., entered April 26, 1923, dismissing an action for an injunction, after a trial to the court. Reversed.

*Gus L. Thacker,* for appellants.

*Hayden, Langhorne & Metzger,* for respondent.

MACKINTOSH, J.—In June, 1921, the appellants procured a certificate of public necessity from the state department of public works by which they were given the right to operate automobiles and trucks for the carrying of passengers and freight for hire between Morton and Randle and Randle and Lewis, in Lewis county, and since that time they have been engaged in that business, maintaining service in accordance with a schedule filed with the department. The respondent

[1] Reported in 219 Pac. 845.

has a government contract for the carriage of mail, and to fulfill that contract he operates a mail stage between Morton and Randle and Lewis over the same route as that designated in the appellants' certificate. This action is to restrain the respondent from carrying passengers and hauling freight over this route.

The testimony shows that the respondent has no certificate from the department of public works; he had applied for one, but his application had been rejected. The certificate issued to the appellants was given by virtue of the Laws of 1921, pp. 339, 341, ch. 111, §§ 2 and 4. [Rem. Comp. Stat., §§ 6388, 6390.] The testimony shows that the respondent habitually has carried varying amounts of freight for different persons living along the route, for which in at least the majority of instances, he received pay; that frequently he carried passengers, who in a great many cases, paid for the service.

Various excuses are offered for respondent's conduct; to wit, that the services which he had been granting were gratuitous; that they had been rendered on occasions when the appellants' vehicles were not available to persons desiring the service; that on some occasions the services were rendered on a special contract, and, altogether, that it was a matter of trifling moment, at best.

Reading the record, we cannot but be impressed with the fact that the respondent has at all times been ready and anxious to haul such freight and carry such passengers as the capacity of his equipment would permit. His claim that the things which he has done are merely those "little unremembered acts of kindness and of love" is dissipated by the showing made in the testimony. It is true that he has now some apparent difficulty in remembering the various incidents, but it is

clear that, at the time they occurred, their bases were strictly monetary, and the testimony shows that, although the payment of their fares by the passengers was not made directly into his hands, the money was often left on the seat, to eventually find its way to respondent's pocket.

The facts of this case cannot be distinguished from those which were presented to this court in the recent case of *Davis & Banker v. Nickell,* 126 Wash. 421, 218 Pac. 198, and the language of that opinion fairly covers the present situation. Under the franchise granted to the appellants, they were entitled to protection against unlawful interference and not only the appellants but the public as well, for whose convenience the service is maintained. Even had not the respondent received compensation for the service of which he deprived the appellants, he would not be entitled to continue his course of unlawful interference. It is difficult and probably impossible to lay down a hard and fast rule that will cover the multitudinous situations that may arise regarding this question, and we must be content with repeating what we have already said—that the law will not interfere to "condemn and outlaw neighborly acts even though frequently indulged in." But where, as here, the respondent "constantly picks up passengers at both termini and way stations in such a way and under such conditions that in the absence of further explanation the conclusion that it was done for the purpose of injuring the appellants' business seems unescapable," courts will enjoin such conduct.

The case of *Carlsen v. Cooney,* 123 Wash. 441, 212 Pac. 575, is relied on by the respondent as justifying his conduct. But the facts of his conduct are not at all comparable with the facts in the *Carlsen* case. In that

case there was involved one contract for hauling a special load of merchandise, and this one instance, the court held, did not amount to an operation of his truck by the defendant between fixed termini and over regular routes, within the meaning of ch. 111, Laws of 1921, p. 338. [Rem. Comp. Stat., § 6387.] One special contract would not be sufficient to entitle the owner of a certificate to enjoin the person making that contract from performing, but if those contracts became so numerous as to show that they were infringing upon the certificate holders' franchise, and that they were not casually done, the courts would interfere. To a large extent, each one of these cases must rest upon its particular facts and, as we have said, we are satisfied in the instant case that the conduct of the respondent was an unlawful interference with the appellants' rights.

The judgment is reversed, and the appellants are granted a decree enjoining the respondent from hauling freight or carrying passengers in competition with the appellants.

MAIN, C. J., PARKER, HOLCOMB, and TOLMAN, JJ., concur.