[No. 27316. Department One. June 24, 1939.]

E. M. STRICKLER, *Respondent,* v. FERD J. SCHAAF, *as Director of the State Department of Public Service, et al., Appellants.*[1]

[1]Reported in 91 P. (2d) 1007.

*The Attorney General, Don Cary Smith, Assistant (Will M. Derig, of counsel), and Neal, Brodie & Trullinger,* for appellants.

*Edward M. Connelly, Elmer E. Johnston,* and *W. C. Donovan,* for respondent.

MAIN, J.—The plaintiff, Emma M. Strickler, brought this action seeking injunctive relief against the defendants. After the action was instituted, the Motor Coach Association of this state intervened. The defendant the department of public service and the Motor Coach Association, by cross-complaints, sought an injunction against the plaintiff to prohibit her from transacting the business in which she had been theretofore engaged. The trial was to the court without a jury, and resulted in findings of fact from which the court concluded that the plaintiff was entitled to the relief which she sought, and that the defendants and intervener were not entitled to prevail. From the decree entered restraining the defendants from interfering with the business which the plaintiff is operating, the defendants and intervener appeal.

The prosecuting attorney of Spokane county was party defendant in the superior court, but he is not a party to the appeal.

The facts necessary to present the questions for determination may be summarized as follows: Emma M. Strickler, the respondent, maintains an office in the city of Spokane, where she has been located for approximately five years. In this office, she sublets desk room to various people and renders general secretarial and office service to them. The only portion of the business which affects this case is what is called a "travel information bureau service." People who own

or drive cars and are apt to take trips to various points within or without the state and who know of respondent's travel bureau, come to her office and register. No charge is made to the car owner for this registration, the purpose of which is to secure passengers to ride with the owner. The respondent also registers people who come to her office seeking to obtain a ride to various points in Washington and other states. The result is that the respondent brings together car owners desiring to obtain passengers and individuals desiring to secure rides and share the expense of the trip.

If the respondent is able to bring together the owners and passengers, she charges a regular fee which is proportioned somewhat to the length of the trip and which the passenger pays. Thus, the charge which she makes from Spokane to Coulee Dam is fifty cents, and from Spokane to Seattle is one dollar. The respondent has nothing to do with making the arrangements as to compensation or share of the expenses, upon which matter the car owner and passenger or passengers agree among themselves.

Whether this is an unlawful business which the respondent is conducting depends upon whether she is an aider or abettor to the violation of the auto transportation act (Rem. Rev. Stat., §§ 6387 to 6397 [P. C. §§ 234-3 to 234-13]), and this, in turn, depends upon whether the owners of the cars which are registered with her for the purposes indicated are engaged in a transportation business without complying with the provisions of that act.

It is first contended that the act is violated in that the owners of the automobiles, or some of them, operate between fixed termini and over a regular route. Auto transportation is defined in Rem. Rev. Stat., § 6387 [P. C. § 234-3]. That statute provides

that the term "auto transportation company," when used in the act, means every corporation or person operating or managing any motor-propelled vehicle not usually operated on or over rails,

". . . used in the business of transporting persons, and, or, property for compensation over any public highway in this state between fixed termini or over a regular route. . . ."

Rem. Rev. Stat., § 6388 [P. C. § 234-4], provides that every person who engages for compensation to perform the service of transporting persons or property over the public highways of the state shall first obtain a permit from the department of public service. Section 6393 [P. C. § 234-9], for rendering the service mentioned without having obtained the permit, fixes a penalty.

It will be observed that, under the section of the statute where auto transportation company is defined, the operators coming under the act must be engaged "in the business of transporting persons, and, or, property for compensation." The statute providing that no auto transportation company shall carry persons for hire between fixed termini and over a regular route without obtaining a license applies to common carriers. Isolated or occasional transportation of persons does not constitute "engaging in business." *Commonwealth v. White,* 260 Mass. 300, 157 N. E. 597; *Independent Truck Co. v. Wright,* 151 Wash. 372, 275 Pac. 726. Under the evidence and under the facts as found by the trial court, the persons engaged in registering at the respondent's office only made occasional trips, and most of them, if not all, made but one or two. The arrangements which were made between the parties themselves were what might be called joint adventure or share the expense trips, and these would not require a license or certificate in order that

they might be legal. *Coleman v. Achim,* 114 Fla. 89, 153 So. 96.

Whether any of the parties engaged in this transportation were operating unlawfully, without first having obtained a certificate, the one vulnerable in this respect is the one who had a truck to deliver daily newspapers from Spokane to Coulee Dam and intermediate points and made two regular trips every day. On these trips, if he had space, sometimes he would take a passenger or two. He expressly testified that there at no time was any arrangement for compensation. It was more in the nature of an accommodation, and it was left to the person riding with him to fix or give what he or she might be disposed to at the end of the trip.

The evidence upon how the owner of this newspaper route was paid by the people that rode with him from time to time is in conflict. The trial court found that none of the persons using the respondent's service was engaged in the business of transporting persons for compensation over any of the public highways of the state between fixed termini and over a regular route. This would indicate that the trial court's view was that the service rendered over the Coulee Dam route was as testified to by the owner of that route. If the owner thereof made no charge, carried persons as an accommodation or for such fee as they felt like contributing at the end of the journey, he would not be doing a thing that was unlawful. It naturally follows that, if his acts were not unlawful, it could not be said that those of the respondent were.

This case differs from those of *Davis & Banker v. Nickell,* 126 Wash. 421, 218 Pac. 198, and *Davis v. Clevinger,* 127 Wash. 136, 219 Pac. 845, in that in each of those cases the carrying of passengers, free or occasionally, for compensation, was done for the purpose

of injuring the business of a certificate holder. There is no element of that kind in this case.

█ The next question is whether the statute which regulates the caravaning of motor vehicles from other states, intended for sale or exchange in this state, without first having obtained a license so to do, has been violated. Rem. Rev. Stat., Vol. 7A, §§ 6382-60, 6382-61, 6382-62 [P. C. §§ 240-71, 240-72, 240-73]. There is little evidence on this matter, and what there is is not sufficient to justify the conclusion that the respondent either knew, or in the exercise of reasonable forethought could have known, that she had registered one or more automobiles which were being caravaned into this state. In any event, this one instance would not justify an injunction prohibiting the respondent from carrying on her travel information bureau business.

█ There is the further suggestion in the brief of the appellants that the operation of the respondent's travel bureau is contrary to public policy and a menace to the safety and welfare of the public. It will be admitted that the evidence shows that these joint adventure or share the expense trips were, in some instances, hazardous, and, in some instances, the owner or operator of the car had no insurance which would protect those riding with him. Whether they should be permitted, is a question for the legislature and not for the court.

The judgment will be affirmed.

BLAKE, C. J., STEINERT, ROBINSON, and JEFFERS, JJ., concur.