[No. 35159. Department Two. May 12, 1960.]

HORLUCK TRANSPORTATION COMPANY, INC., *Appellant,* v. ROBERT B. ECKRIGHT et al., *Respondents.*[1]

[1]Reported in 352 P. (2d) 205.

*Garland, Garland & Bishop (Marion Garland, Jr.,* of counsel), for appellant.

*Merrill Wallace,* for respondents.

HILL, J.—This is an action to enjoin a voluntary association from operating a sixteen-passenger-"Metro" bus without a certificate of "public convenience and necessity."

The question presented is whether a voluntary association of individuals, owning a bus and operating under the conditions hereinafter indicated, is either a common carrier or an auto transportation company within the purview of RCW, chapter 81.68.

The association is, concededly, operating without a certificate from the state public service commission, "declaring that public convenience and necessity require such operation." (See RCW 81.68.040)

The voluntary association, above referred to, is known as the Sidney Road Riders Club. Its bus is operated one round trip each work day between Sidney Road (Port Orchard) and the Puget Sound Naval Shipyard at Bremerton, for the purpose of taking its members to work in the morning and returning them to their homes in the evening. Only persons who work in the Puget Sound Naval Shipyard can be members of the club, and they are the only persons carried on the bus; each member pays a fare of forty cents each day he rides.

■ We have no difficulty in holding with the trial court that this voluntary association is not a common carrier. The leading case on common carriers is probably *Cushing v. White* (1918), 101 Wash. 172, 172 Pac. 229, and this definition appears therein (p. 174),

" 'A common carrier of passengers is one who undertakes for hire, to carry all persons indifferently who may apply for passage. To constitute one a common carrier, it is necessary that he should hold himself out as such. . . .' Thompson, Carriers of Passengers, p. 26, note 1."

■ This is, perhaps, an oversimplification, but it seems clear the association is not a common carrier. On the other hand, it seems to fit squarely within the definition of an auto transportation company, as stated in RCW 81.68.010:

"The term 'auto transportation company' means every person [a voluntary association of persons known as the Sidney Road Riders Club] . . . owning, controlling, operating, or managing any motor propelled vehicle not usually operated on or over rails [a sixteen-passenger-Metro bus], used in the *business* of transporting persons [the mem-

bers of the Sidney Road Riders Club] . . . over any public highway in this state between fixed termini [over the public highway between Port Orchard and the Puget Sound Naval Shipyard in Bremerton] or over a regular route. . . ." (Italics ours.)

Even the exceptions are significant: Persons who own, control, operate, or manage "taxicabs, hotel buses, or school buses" are not included in the definition.

█ If there is any element of the definition that is open to question in this case, it is whether the bus is "used in the business of transporting persons." Our leading case on that phase of the definition is *Strickler v. Schaaf* (1939), 199 Wash. 372, 91 P. (2d) 1007, 123 A. L. R. 226. It states that isolated or occasional transportation of persons does not constitute "engaging in business." The transportation, here, is neither isolated nor occasional; the bus operates every working day.

█ It is clearly the intent of RCW, chapter 81.68, that the public service commission shall not only exercise control over common carriers, but over those which are in the business of regularly transporting persons for compensation on public highways, inasmuch as RCW 81.68.040 makes no mention of common carriers, but provides that,

" . . . No auto transportation company [the voluntary association known as the Sidney Road Riders Club] shall hereafter operate for the transportation of persons [the members of the Sidney Road Riders Club] for compensation [forty cents for a round trip] between fixed termini [Port Orchard and the Puget Sound Naval Shipyard in Bremerton] or over a regular route in this state, without first having obtained from the commission a certificate declaring that public convenience and necessity require such operation.

" . . ."

█ As before pointed out, the voluntary association owning and operating the sixteen-passenger-Metro bus has no such certificate. A violation of RCW 81.68.040 is made a gross misdemeanor by RCW 81.68.080.

We have repeatedly held that the legislature may regulate the use of the highways for private gain, and that such a

regulation is a valid exercise of the police power. *Northern Pac. R. Co. v. Schoenfeldt* (1923), 123 Wash. 579, 213 Pac. 26, and cases cited therein at page 585.

We have further discussed the purpose of the act in question in *Davis & Banker, Inc. v. Nickell* (1923), 126 Wash. 421, 218 Pac. 198, where we said (p. 423),

"The purpose of the transportation act is to permit the establishment of regular and dependable service wherever public necessity and convenience requires. No adequate service can be given without proper equipment, and, as appears here, appellant has invested upwards of $20,000 in equipment to enable it to properly serve the public on this route. An income must be earned which will cover operating costs and depreciation and give some return on the investment or the service cannot be long continued. . . ."

The plaintiff, Horluck Transportation Company, Inc., is a common carrier and has a certificate of necessity for the transportation of passengers between Port Orchard and Bremerton, by water only. Its certificate also covers the operation of feeder bus lines throughout the Port Orchard area to connect with its boats operating between Port Orchard and Bremerton.

This is an action to protect the property rights and interests of the plaintiff. The right of the plaintiff to maintain this action has not been questioned. The theory is that the unlawful acts of the defendants, in functioning as an auto transportation company without the requisite certificate, have deprived, and will continue to deprive, the plaintiff of the revenues and earnings which might otherwise have accrued to it; and this is an interference with its property which constitutes a damage to it specially. *Northern Pac. R. Co. v. Schoenfeldt, supra; State ex rel. Seattle & Rainier Valley R. Co. v. Superior Court* (1923), 123 Wash. 116, 212 Pac. 259; *Puget Sound Traction, Light & Power Co. v. Grassmeyer* (1918), 102 Wash. 482, 173 Pac. 504, L. R. A. 1918F, 469. In the last cited case it is said (p. 490),

". . . the plaintiff has a franchise granted it by the sovereign power authorizing it to carry passengers for hire on the streets of the city of Bellingham. This franchise is

property, and any unlawful interference therewith is actionable. It is true the franchise is not exclusive in the sense that the sovereign power may not grant a similar right to another, but it is exclusive against any one who assumes to exercise the privilege of carrying passengers in the absence of authority or in defiance of the laws regulating the privilege. To do so is unlawful, and since the plaintiff is injuriously affected thereby, it is entitled to injunctive relief. . . . [citing cases and authorities]."

(The parties and the trial court having apparently attached no significance to the fact that the plaintiff's certificate is for transportation between Port Orchard and Bremerton "by water only," we have, likewise, given it no consideration in arriving at our conclusion that it was entitled to maintain this action.)

The trial court concluded that the "defendants individually and as members of the Sidney Road Riders Club are not a common carrier," as defined by the laws of the state of Washington, and, hence, are not required to have a certificate of public convenience and necessity. For that reason the plaintiff's action was dismissed.

This matter is now before us on the appeal of the plaintiff; and, as we have indicated, we have concluded that respondents in operating their bus without a certificate of public convenience and necessity are violating RCW 81-.68.040, and that, on the record now before us, the appellant is entitled to the relief requested. The opinion might end here.

However, the respondents have apparently operated in the belief that certificates of public convenience and necessity are required only of common carriers; and that was the rationale of the dismissal of the appellant's action by the trial court. It should, therefore, be made clear that our holding to the contrary is based not only upon our interpretation of RCW 81.68.040, but upon our own investigation of the pertinent authorities.

Concededly, the public service commission cannot require the respondents to become a common carrier. It has been repeatedly held by the highest authority that a person

cannot be compelled to dedicate his property to the public service, as a common carrier for hire, as a condition precedent to being permitted to use the highways in the gainful occupation of hauling passengers or property. *Frost Trucking Co. v. Railroad Comm.* (1926), 271 U. S. 583, 70 L. Ed. 1101, 46 S. Ct. 605, 47 A. L. R. 457; *Michigan Public Utilities Comm. v. Duke* (1925), 266 U. S. 570, 69 L. Ed. 445, 45 S. Ct. 191, 36 A. L. R. 1105.

On the other hand, it is the universally accepted doctrine that use of the public roads for the conduct of business thereon is an extraordinary use, and, as such, is enjoyed not as a right but as a privilege. That the state may altogether exclude any hauling by a carrier, common or contract intrastate, from its roads is generally taken for granted. *Stephenson v. Binford* (1931), (D. C. Texas) 53 F. (2d) 509; affirmed (1932), 287 U. S. 251, 77 L. Ed. 288, 53 S. Ct. 181, 87 A. L. R. 721.

The right of the state to regulate the privilege of using its highways for the transaction of business thereon is not disputed. The regulation in this state, so far as passenger transportation between fixed termini or over a regular route, is under RCW, chapter 81.68, the statute with which we are now concerned. (The statutes relating to "for hire vehicle," as defined by RCW 81.72.010 and RCW 46.04.190, and "Auto stage," as defined by 46.04.050 relating to licensing, bond required, type of equipment, and the like are not regulatory in the same sense as RCW, chapter 81.68, *i.e.*, of determining the right to operate, and fixing the terms and conditions of that operation including rates to be charged and service to be rendered.)

In most states certificates of convenience and necessity are limited to common carriers, and contract and other "for hire" carriers are given permits of various types.

However, there are states, and we direct attention to a few, where certificates of public convenience and necessity are, or were, required of contract and other "for hire" carriers. *State ex rel. Kelley v. Ramsey* (1938), 132 Fla. 647, 181 So. 885; *Rutledge Co-op. Ass'n v. Baughman* (1927), 153 Md. 297, 138 Atl. 29, 56 A. L. R. 1042; *Barney*

*v. Board of Railroad Comm'rs* (1932), 93 Mont. 115, 17 P. (2d) 82. In *Southern Motorways v. Perry* (1930), 39 F. (2d) 145, Judge Sibley, speaking for a three-judge district court concerning a Georgia statute, said (p. 147),

"The requirement of a certificate of public necessity and convenience is justifiable. Carriers for hire, . . . whether in all respects common carriers or not, may be put in a legislative class for regulation. . . ."

In the Florida case of *Riley v. Lawson* (1932), 106 Fla. 521, 143 So. 619, 621, it is pointed out that the showing required to be made by a private contract carrier operating "in continuous or recurring carriage" to secure a certificate of convenience and necessity (p. 535),

" . . . does not rest upon the same considerations that are required to be shown in order to demonstrate public convenience and necessity for the operation of common carriers."

The court then points out, as one distinction, that there is no statutory requirement, as is the case with common carriers, that any public necessity or demand for the proposed private contract carrier be shown by an applicant in order to obtain a certificate. It is further indicated that the certificate of public convenience and necessity will be granted to the private contract carrier, if the commission is satisfied that the operation for which the certificate is sought meets the stated statutory factors required to be considered, and that private interests are not served to the detriment of the public interest. See, also, *Central Truck Lines, Inc. v Railroad Comm.* (1935), 118 Fla. 526, 160 So. 22; *State ex rel. Kelley v. Ramsey, supra.*

Our statute, RCW, chapter 81.68 (perhaps intentionally), offers few criteria to determine whether or not a certificate of public convenience and necessity shall be issued; but it does say that where an applicant requests a certificate to operate in an area already served by a certificate holder, the commission may,

" . . . after hearing, issue the certificate only if the existing auto transportation company or companies serving

the territory will not provide service to the satisfaction of the commission." RCW 81.68.040.

We say "perhaps intentionally," because the Florida supreme court in a lengthy discussion of the meaning of the phrase "public convenience and necessity," in *Central Truck Lines, Inc. v. Railroad Comm., supra,* says that it (p. 532),

". . . has not been defined by the lawmakers in the Act, nor indeed has it ever been defined in any precise way by the courts. . . ."

Reference is also made to "discreet generality," and "flexible language."

Whether the appellant is an "existing auto transportation company," or whether there is some other "existing auto transportation company" operating between Port Orchard and Bremerton, we are not advised; nor is it presently material what standards the public service commission may apply in passing on the application of the respondents, if they elect to apply for a certificate. It is our view that they should be given the opportunity to make such an application, and that their operation should not be enjoined pending the action of the public service commission on their application.

Indeed, we would go a step further for what we have said regarding the 1921 Washington statute (RCW, chapter 81.68), if it does not suggest the need of a revision of the laws regulating the transportation of passengers in this state, it does, in any event, suggest that the novelty and the importance of the matters the public service commission will be called upon to determine, should an application be made by the respondents, are such that any injunction of the operation of the respondents should, if the certificate is refused, be further withheld until the respondents' right to such a certificate can be reviewed in the courts and a judicial determination made, if one is sought.

The order of dismissal is reversed with directions to grant the injunction as prayed for, unless within twenty days after the going down of the remittitur respondents make an application to the public service commission for a

certificate of public convenience and necessity covering their operation. If such application is made, the superior court may enter such further orders, not inconsistent with the views herein expressed, as will maintain the *status quo* pending the final determination of the respondents' rights to such a certificate.

WEAVER, C. J., ROSELLINI, and FOSTER, JJ., concur.

FINLEY, J. (dissenting)—The majority concede that the association known as the Sidney Road Riders Club is not a common carrier, inasmuch as it does not undertake for hire to carry all persons indifferently who may apply for passage. In my opinion, that should end the matter. Section 2 of the Auto Transportation Companies Act (Laws of 1921, chapter 111, p. 338, as amended by Laws of 1927, chapter 166, p. 179), now codified as RCW 81.68.020, provides as follows:

"Section 2. No corporation or person, their lessees, trustees, receivers or trustees appointed by any court whatsoever, shall engage in the business of operating *as a common carrier* any motor propelled vehicle for the transportation of persons, and/or, property between fixed termini or over a regular route, for compensation on any public highway in this state, except in accordance with the provisions of this act." (Italics mine.)

Section 4 of the same statute, upon which the majority rely in holding that the defendant's association may not lawfully operate without obtaining a certificate of public convenience and necessity, provides that

"No auto transportation company shall hereafter operate for the transportation of persons and, or, property for compensation between fixed termini or over a regular route in this state, without first having obtained from the Commission under the provisions of this act a certificate declaring that public convenience and necessity require such operation; . . ." (*Cf.* RCW 81.68.040)

It may well be that the defendant's association comes within the statutory definition of "auto transportation company;" see § 1 of the statute—RCW 81.68.010—quoted in the majority opinion. However, § 4 is not to be read alone;

it is to be read in conjunction with § 2. *Carlsen v. Cooney* (1923), 123 Wash. 441, 212 Pac. 575. Reading the two sections together, I am convinced that the legislature intended the requirement of a certificate of public convenience and necessity to be applicable only with respect to those auto transportation companies desiring to operate as common carriers. A careful reading of the two sections will reveal that, had the legislature intended otherwise, there simply would have been no reason for inserting the phrase, "as a common carrier," into § 2 of the act. Consequently, I would affirm the judgment of the trial court without qualification.