[No. 13049.    Department One.    March 29, 1916.]

## THE STATE OF WASHINGTON, *Respondent*, v. SEATTLE TAXICAB & TRANSFER COMPANY, *Appellant*.[1]

STATUTES—SUBJECTS AND TITLES. The provision in the jitney bus act, Laws 1915, p. 227, requiring certain carriers to give a surety bond before engaging in business, is germane to and sufficiently included within the title "an act relating to and regulating common carriers of passengers upon public streets, roads and highways."

CONSTITUTIONAL LAW—CLASS LEGISLATION—EQUAL PROTECTION OF THE LAWS. The jitney bus act, Laws 1915, p. 227, does not violate Const., art. 2, § 19, prohibiting class legislation or the denial of the equal protection of the laws, in that motor carriers of passengers for hire on the public streets in cities of the first class are required to give a surety bond before engaging in business, while none is required of street cars; as the regulation is a reasonable exercise of the police power.

CARRIERS—MOTOR VEHICLES—REGULATION—BONDS. Such act is not unconstitutional as requiring a surety bond without provision for substitutes of any kind, where it was not shown that there were no such companies authorized to do business in the state; the presumption being that such bonds are obtainable, and the court cannot know judicially that the requirement is unreasonable.

SAME. The fact that such bonds were denied to those who were financially irresponsible does not show that the act was unreasonable or unconstitutional as prohibitive.

CONSTITUTIONAL LAW—CLASS LEGISLATION. The fact that carriers of the United States mails are exempted from the provision of the act does not render it void.

SAME—FEDERAL LIMITATIONS—APPLICATION. The act is not unconstitutional as invading the 4th and 5th amendments to the constitution of the United States, as they are limitations on the powers of the Federal government and have no application to state laws.

SAME—CRIMINAL LAW — SELF-INCRIMINATION — IMPRISONMENT FOR DEBT. The act is not unconstitutional as violating Const., art. 1, §§ 9 and 17, providing that no person shall be compelled in any criminal case to be a witness against himself, and that there shall be no imprisonment for debt.

SAME—DUE PROCESS OF LAW. The act does not violate the due process clauses of the state and Federal constitutions.

[1]Reported in 156 Pac. 837.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered May 5, 1915, upon a trial and conviction of violating an act relating to the regulation of common carriers of passengers.   Affirmed.

*William Hickman Moore, Hugh Todd, Bogle, Graves, Merritt & Bogle,* and *Brightman, Halverstadt & Clarke,* for appellant.

*Alfred H. Lundin, W. F. Meier,* and *Joseph A. Barto,* for respondent.

*C. J. France, Shorett, McLaren & Shorett, James E. Bradford,* and *William B. Allison, amici curiae.*

FULLERTON, J.—The legislature of the state of Washington, at its biennial session of 1915, passed an act relating to common carriers of passengers, the title and body of which reads as follows:

"An act relating to and regulating common carriers of passengers upon public streets, roads and highways, providing for the issuance of permits; prescribing penalties for violations, and providing when this act shall take effect.

"Be it enacted by the Legislature of the State of Washington:

"Section 1.   It shall be unlawful for any person, firm or corporation, other than a steam, street or interurban railway company, to engage in or to carry on the business of carrying or transporting passengers for hire in any motor propelled vehicle along any public street, road or highway, within the corporate limits of any city of the first class, without having first obtained a permit so to do as hereinafter provided: Provided, That any street or interurban railway or other transportation company engaging in the business of transporting passengers for hire in any motor propelled vehicle except street cars along any public street, road or highway in this state, shall come under the provisions of this act: Provided, further, That the provisions of this act shall not apply to carriers of U. S. Mail.

"Sec. 2.   Every person, firm or corporation other than a steam, street or interurban railway company, desiring to en-

gage in the business of carrying or transporting passengers for hire in any motor propelled vehicle over or along any public street, road or highway in any city of the first class and every street or interurban railway or other transportation company desiring to engage in the business of transporting passengers for hire in any motor propelled vehicle except street cars, shall apply to the secretary of state for a permit so to do, and such applicant for each motor vehicle intended to be so operated shall deposit and keep on file with the secretary of state a bond running to the State of Washington in the penal sum of twenty-five hundred dollars, with good and sufficient surety company licensed to do business in this state as surety to be approved by the secretary of state, conditioned for the faithful compliance by the principal of said bond with the provisions of this act and to pay all damages which may be sustained by any person injured by reason of any careless, negligent or unlawful act on the part of said principal, his agents or employes in the conduct of said business or in the operation of any motor propelled vehicle used in transporting passengers for hire over or along any public street, road or highway, and shall pay to the secretary of state a fee of five dollars and thereupon such license shall be issued to the applicant.

"Sec. 3. Every person injured by any careless, negligent or unlawful act of any person, firm or corporation receiving a permit under the provisions of this act, or his, their, or its agents, or employes in conducting or carrying on said business or in operating any motor propelled vehicle used for the carrying and transporting of passengers over and along any public street, road or highway, and his heirs, executors and administrators shall have a cause of action against the principal and surety upon the bond provided for in the preceding section for all damages sustained and in any such action the full amount of damages sustained may be recovered against the principal, but the recovery against the surety shall be limited to the amount of the bond and a surviving husband and child or children or if no husband, then the child or children shall have action for the death of the wife or mother caused by any such negligence.

"Sec. 4. Every person, firm or corporation, other than a steam, street or interurban railway company, engaging in the business of carrying or transporting any passengers for

hire in any motor propelled vehicle along or over any public street, road or highway or carrying or transporting any passengers for hire along or over any public street, road or highway in any city of the first class, and every street or interurban railway or transportation company engaging in the business of transporting passengers for hire in any motor propelled vehicle except street cars, without having first obtained and having a permit so to do as in this act provided shall be guilty of a gross misdemeanor.

"Sec. 5. If any part of this act be held invalid by any court, the remainder of this act shall nevertheless be valid.

"Sec. 6. This act is necessary for the immediate preservation of the public safety, and shall take effect April 10th, 1915." Laws 1915, p. 227, ch. 57.

On April 27, 1915, the prosecuting attorney of King county filed an information in the superior court of that county charging the Seattle Taxicab & Transfer Company, a corporation, with a violation of the act. The company, on appearing in answer to process served upon it, did not contest the charge that it had operated its taxicabs without a compliance with the provisions of the act, but rested its defense on the ground that the act itself was void and of no effect, because in contravention of the constitution of the United States as well as the constitution of the state of Washington. At the conclusion of the trial, the company was adjudged guilty by the trial court, and sentenced to pay a fine as for a gross misdemeanor. From the judgment and sentence, this appeal is prosecuted.

In this court, likewise, constitutional questions only are presented. The act is assailed by counsel specially representing the appellant as violative of § 19 of art. 2, §§ 1 and 12 of art. 1, of the state constitution, and § 1 of art. 14, of the amendments to the constitution of the United States. We have been favored also with briefs of counsel representing other interests, and these, in addition, assail the act as violative of §§ 7, 9 and 17 of art. 1, of the state constitution, and the fourth and fifth amendments to the Federal constitu-

tion.   These objections we shall notice in order, taking up first those founded upon the state constitution.

Section 19 of art. 2 of the state constitution provides that, "No bill shall embrace more than one subject, and that shall be expressed in the title."   The claim of unconstitutionality on this branch of the question is founded on the concluding clause of this provision, the particular contention being that the title of the act does not express its subject-matter.   The appellant points out that the only operative words of the title of the act which can be said to denote its contents are found in the first clause thereof, that is, in the words, "an act relating to and regulating common carriers of passengers upon public streets, roads and highways," and these, it argues, give no hint that a bond is to be required from a certain class of common carriers before they will be permitted to engage in the business of carrying passengers.

But it is our opinion that the title is sufficient.   How full the title of an act must be in order to express its subject has frequently been a question for the consideration of this court. We have frequently held that the title to an act to be sufficient need not be an index to the body of the act; that it is sufficient if it is suggestive of the general subject treated; that the generality of a title is no objection to it, so long as it is not made a cover to legislation incongruous in itself; and that, under a general subject, may be included innumerable minor subjects, if these minor subjects relate to the general subject expressed and form a comprehensive whole.   More specifically, we have held that the title, "an act relating to pleadings in civil actions," was sufficiently definite, not only to permit the enactment of specific provisions relating to the subject of pleadings, but also to permit the repeal of certain existing sections of the statute on the same subject; *Marston v. Humes*, 3 Wash. 267, 28 Pac. 520.   In *State v. Fraternal Knights and Ladies*, 35 Wash. 338, 77 Pac. 500, we held that, under the title, "an act regulating fraternal beneficiary societies, orders, or associations," certain enumerated bene-

ficiary insurance societies could be prohibited from doing business in this state unless their mortuary assessment rates equaled or exceeded a certain minimum named in the statute. In *Seattle v. Barto*, 31 Wash. 141, 71 Pac. 735, an ordinance requiring one desiring to engage in the business of a pawnbroker to procure a license was held valid although enacted under the title, "an ordinance to license and regulate certain trades and occupations in the city of Seattle." In *Ewing v. Seattle*, 55 Wash. 229, 104 Pac. 259, the title of the act was, "an act relating to electric railroads, street and other electric railways, . . .," and was held sufficiently broad to embrace a provision providing for the granting of franchises for such railways by the legislative authority of a city. And see, also, *State ex rel. Puget Mill Co. v. Superior Court*, 68 Wash. 425, 123 Pac. 791; *Cudihee v. Phelps*, 76 Wash. 314, 136 Pac. 367; *State ex rel. Jones v. Clausen*, 78 Wash. 103, 138 Pac. 653. The principle of these cases clearly support the title to the act in question. Unquestionably the subject-matter of the act is the regulation of common carriers of passengers, and the requirement that certain classes of such carriers shall give a bond to cover losses caused by negligence in the exercise of the business is not so far foreign to the general subject as not to be embraced in a title which refers only to the general subject.

It is next contended that the statute violates § 19, art. 2 of the constitution, which prohibits the legislature from passing laws granting to one citizen or class of citizens privileges and immunities which are not granted to all alike, and hence is discriminatory as it denies to him the equal protection of the laws. The appellant's learned counsel do not contend, of course, that the legislature may not classify the subjects of legislation and enact laws applicable to one class not applicable to another, nor do they contend, as we understand them, that the legislature may not divide general classes into sub-classes, where there is a just and reasonable ground

for a distinction, and enact laws applicable to one sub-class not made applicable to another. But if this latter division be thought not tenable, a brief consideration will show its fallacy. Take, for comparison, the case of a steam railway hauling passengers for hire between two given points, and the case of a stagecoach company doing the same thing between the same points. Both are common carriers of passengers, and both are subject to legislative regulation as such. The statute books are full of instances where regulations have been made applicable to the one and not to the other, which have been upheld by the courts, yet no case, in so far as we are advised, has ever yet held such a regulation invalid because the particular regulation applied to the one and not to the other. An apt illustration of the principle is found in the case of *Pacific Express Co. v. Seibert*, 142 U. S. 339. The issue there was the validity of the act of the Missouri legislature imposing a tax on all express companies carrying on the business of transportation for hire on railroads and steamboats, but exempting all other concerns carrying on the same business which owned its own means of transportation. The act was attacked on the ground that it was an attempt to subdivide classes, but the court upheld the classification, saying there was a vital distinction between express companies defined in the act and those concerns exempted from the tax, in that railroads and steamboat companies paid taxes upon the means of carriage and their other tangible property, while express companies of the kind defined had no tangible property of consequence, and that the act was a just discrimination in order that the burdens of government might be equally borne. Another illustration is found in the case of *Texas Co. v. Stephens*, 100 Tex. 628, 103 S. W. 481, where the court said:

"Persons, who in the most general sense, may be regarded as pursuing the same occupation, as for instance merchants, may thus be divided into classes and the classes may be taxed in different amounts and according to different standards:

Merchants may be divided into wholesalers and retailers, and, if there be reasonable grounds, these may be further divided according to the particular classes of business in which they may engage."

Illustrations of the same principle are found in our own reports, although perhaps the precise question was not discussed in any of them. Such a classification was made in the Laws of 1911, p. 131 (3 Rem. & Bal. Code, § 6580-a), which prohibits the employment of women for more than eight hours during any day in any mechanical or mercantile establishment, except in curing or canning perishable fruit, vegetable or fish, upheld in *State v. Somerville,* 67 Wash. 638, 122 Pac. 324. So the workmen's compensation act, classifying the various occupations of the state into hazardous and nonhazardous occupations, upheld in *State ex rel. Davis-Smith Co. v. Clausen,* 65 Wash. 156, 117 Pac. 1101, 37 L. R. A. (N. S.) 466; the statute of 1907, p. 436, regulating fishing for salmon, upheld in *State v. Tice,* 69 Wash. 403, 125 Pac. 168, 41 L. R. A. (N. S.) 469; and the statute permitting certain business occupations to be conducted on Sunday and prohibiting the conducting of others, upheld in *State v. Nichols,* 28 Wash. 628, 69 Pac. 372. Other instances can be cited, but these are sufficient to show that classification of general classes for the purposes of legislation is upheld whenever there is between them any reasonable distinction on which classification can be based.

But the appellant's principal contention is that the classification here made is not based upon any just difference between the character of the carrier made subject to the regulation of the statute and those exempt from its provisions. A reference to the first section of the act will show that the regulation is made applicable to any person, firm or corporation engaged in carrying passengers for hire along any public street, road or highway in cities of the first class of the state in any motor propelled vehicle, other than street cars and vehicles carrying the United States mail. It will be ob-

served, also, by a reference to the second section, that the act does little if any more than require the operation of such vehicles to provide for a solvent fund out of which persons injured by the negligent operation of the vehicles may recover for the injuries suffered from their negligent operation. The question then is, Is there any just ground for this distinction? In our opinion, the question must be answered affirmatively. A street car company, as is well known, must operate its carriers upon fixed tracks. The carriers also must be large and heavy, requiring, whether steam, gasoline or electrically propelled, powerful although delicate and costly machinery. Such a company, therefore, before it can begin operations at all, must expend large sums of money in the procurement of visible and tangible property which can be made subject to its obligations. Experience has taught them, moreover, that however careful it may be in the selection of its necessary employees, or however rigid may be its rules governing their conduct, accidents will happen, either to its passengers or to persons using the streets upon which it operates, for which it must respond in damages. Losses of this character it recognizes and makes the same preparation to meet as it does to meet other fixed charges upon its revenues. It is not so with the other motor propelled vehicles as we now know them. They require no fixed tracks which must be put in at the expense of the operator, as they run upon highways constructed and kept in order by the public. No considerable amount need be invested in visible or tangible property before operations are begun. Indeed the vehicle itself may represent the entire capital of its operator, and this may be destroyed or rendered valueless in the very accident which would give rise to a liability. But without attempting to point out other differences, it is plain that the one, from the necessities of the case, must have a visible fund from which persons negligently injured by its operation may recoup his losses, while the other need not have such a fund, and this

difference we think justifies legislation requiring a bond of indemnity from the one not required of the other.

The question was before the court of criminal appeals of Texas, *Ex parte Sullivan* (Tex. Cr.), 178 S. W. 537, where it was considered at some length. In the course of the opinion, the court said:

"We have had much difficulty in reaching a correct and satisfactory conclusion as to whether or not requiring the jitney operators to procure such bond, and not the other classes of common carriers of passengers for hire in the city, is so unreasonable or such a discrimination as to make this feature of the ordinance void. From our study of the facts and the law applicable, we think it reasonably certain that the record shows three separate and distinct classes of common carriers of passengers for hire in said city (outside of the steam and interurban railways not under consideration), to wit: First, the street car; second, the ordinary hack and automobile; and, third, the jitney. Clearly, the city so regarded them and acted upon such distinction.   .   .   .

"In our opinion the agreed facts in this case show such a marked distinction between the three characters of passenger carriers for hire and the extent and manner of their use of the streets as to justify the city in requiring the operator of the jitney to give such bond and in not requiring either of the other classes of carriers to do so, and that we cannot therefore hold this provision of the ordinance void."

In *Ex parte Cardinal* (Cal.), 150 Pac. 348, and *Ex parte Counts* (Nev.), 153 Pac. 93, the power of a municipality to require, by ordinance, operators of motor propelled vehicles carrying passengers to execute a bond for the purposes required in the statute before us was upheld in well considered opinions. The precise question now before us was not discussed in these latter cases, but since the ordinances made the same distinction between the vehicles regulated and street cars, the question was necessarily decided, and doubtless would have been discussed if thought to be of particular moment. In the case from California, this language was used:

"We see no reason to doubt the power of the state, or any county or municipality, in the exercise of its police power

of regulation, to require security in the shape of a bond or insurance policy from its licensees in all cases where the giving of such security may fairly be held to be a reasonable requirement for the protection of the public. If the power to do this exists, we are satisfied that it cannot properly be held by the courts that the requirement of such security by the ordinance before us was an unreasonable exercise of its power by the board of supervisors of San Francisco. . . .

"In the case at bar we have persons undertaking to pursue upon the public streets of the city and county of San Francisco an occupation that if negligently conducted is fraught with danger not only to those who may be passengers, but also to the public generally upon those streets. The occupation is one that may properly be regulated by the public authorities, and the insistence on a bond or other security in a reasonable amount to indemnify those who may be injured by the negligent or illegal operation of the business appears to us not to be beyond the range of reasonable requirement."

Our own case of *State ex rel. Case v. Howell*, 85 Wash. 294, 147 Pac. 1159, sustains the general power. That was a case brought to test the emergency feature of the act, and while the court took care to say that the question of the validity of the act as a whole was not before us and could not be raised in that form of proceeding, it was said that the act was a form of regulation, and that reasonable regulation of carriers of this kind was so clearly within the police power of the state that the citation of authorities to support the proposition was not necessary.

It is further contended in this connection that the act is invalid because of the particular character of the bond required. The requirement is, it will be noticed, that the bond be obtained from a "good and sufficient surety company licensed to do business in this state," making no provision for substitutes in any form, or for bonds with other sureties of equal responsibility. But we know of no constitutional right which such a provision violates. The power to regulate necessarily implies the power to prescribe the form of regula-

tion, and the most that can be successfully contended for, conceding even that it was without the power of the legislature to actually prohibit this form of traffic, is that the requirement be a reasonable one.  It is not shown that there were no such companies authorized to do business in this state, and since the legislature prescribed this form of bond, the court must presume that they had knowledge of the subject-matter upon which it legislated, and must presume, in consequence, that there are such companies and that bonds are obtainable from them without undue restrictions or unreasonable cost.  We cannot, therefore, know judicially that the requirement is unreasonable.

But it is urged that there are facts in the record which show that bonds of the character prescribed by the act cannot be procured from the surety companies, and that the act, while not ostensibly so, is actually prohibitive.  But the evidence as we read it does not justify this contention.  It undoubtedly shows that many applicants for such bonds who were unable to show that they had sufficient financial ability to meet the losses they were liable to occasion were refused bonds, but it shows, on the other hand, that those who were so financially able had no difficulty in procuring them.  As to those who were denied bonds, the act may be prohibitive, but this does not argue against its constitutionality.  It in no manner proves that the regulation is unreasonable.  Highways are constructed primarily as a convenient passageway for all of the people, and no one has an absolute right to use them for his own private gain, even though such use be to carry over them people who desire the service.  Where all have rights occasions will arise where there must of necessity be regulation.  The operation of motor propelled vehicles on congested streets is fraught with danger.  It is common knowledge that numerous accidents, some of them fatal in their consequences, are a result of such operation, and, plainly, it is not an unreasonable regulation to require that those who engage therein provide a fund out of which

innocent users of the streets who suffer losses caused by the negligent operation of the vehicles can be remunerated in some degree.

Provisions restricting the character of surety that may be furnished, when surety is required as a prerequisite to the granting of a right, is not new in the legislation of this state. From the earliest times the legislature has prescribed the qualifications of sureties, some of the restrictions imposed being more or less burdensome and without much apparent reason. A familiar example is the statute prescribing the qualifications of bail upon arrest, the provisions of which have been made applicable to many other cases where surety bonds are required. It is there provided that no counselor or attorney at law, sheriff, clerk of the superior court, or other officer of such court shall become such bail. So with the sureties on official bonds. Practically every officer of the state and of the several counties, townships and precincts of the state, are required to give bond in some form, yet no person may become a surety for a state or county officer unless he is a resident and freeholder of the state, and no person may become a surety for a township or precinct officer unless he is a resident and freeholder of the county in which the township or precinct is situated. So the statute prohibiting corporations from becoming surety on official obligations, which requires that it be organized for that purpose alone, that it have a capital stock of not less than a designated amount which shall be all subscribed and at least twenty per centum of the same paid in. No one will deny, we think, that security can be found from sources different from that here prescribed which would be as effective for the purpose intended as the security from the prescribed sources, yet no one has ever successfully questioned in the courts the power of the legislature to make the prescribed restrictions. It may be that the legislature could make the restrictions so burdensome as to be unreasonable, and that the same might, for that reason, be void; but, as we have said, we cannot con-

clude, either from the facts shown or from matters of which
we may take judicial knowledge, that it has done so in this
instance.

Nor does the fact that carriers of the United States mails
are exempted from the provision of the act render it void.
These perform a service sufficiently differentiated from the
ordinary carrier of passengers as to form a class of them-
selves, and legislation affecting other classes of carriers is
not of necessity required to include them. The situation sug-
gested in the appellant's brief, namely, that of a large cor-
poration obtaining a contract to carry the mails and thus
monopolizing the jitney traffic in a city, because not subject
to the burden of the act, is hardly possible of consummation.
The act is not capable of a construction which would permit
the owner of a vehicle who has a contract to carry the mails
to run it promiscuously over the streets of the city in the
carriage of passengers when not engaged in the prosecution
of his contract. As we view the act, such an owner can carry
passengers without a violation of the provisions of the act
only while actually transporting the mails over a route most
convenient between the mail stations, otherwise he will fall
within its provisions.

Nor are we able to conclude that the statute invades any
of the other provisions of the state constitution cited, or any
of the provisions of the fourth, fifth or fourteenth amendment
to the constitution of the United States. The fourth and
fifth amendments of the Federal constitution may be left out
of consideration, as it is well settled that these provisions
are limitations upon the powers of the Federal government
and have no application to the powers of the states. Neither
can we see the applicability of the ninth and seventeenth sec-
tions of art. 1 of the state constitution. The one provides
that no person shall be compelled in any criminal case to
give evidence against himself, and the other that there shall
be no imprisonment for debt except in cases of absconding
debtors. It requires no argument to show that, if the act

be otherwise constitutional, it does not violate either of these provisions.

The principal contention, however, is based on the other provisions of the constitutions cited, which provide that no person shall be deprived of his property without due process of law. The courts have never attempted to define with precision the meaning of the phrase "due process of law," or its equivalent from the Magna Charta, "the law of the land." This not because of uncertainty as to the meaning, but rather because of the inability to encompass within the brief terms necessary to a definition all of the multifarious matters to which the phrase is applicable. Broadly speaking, its purpose is to protect the individual against arbitrary action on the part of the state, that is, to secure the citizen against any arbitrary deprivation of his rights relating to his life, liberty or property. As applied to legislative enactments, it was not intended to subject them to the opinion of the court as to their merit or wisdom, but only in so far as to ascertain whether by the terms of the enactment the individual citizen affected is deprived of some right expressed in the fundamental law, or which "inhere in the very idea of free government, which no member of the Union may disregard, as that no man shall be condemned in his person or property without due notice and an opportunity to be heard in his defense."

Tested by these principles, we cannot conclude that the act in question violates this provision of the constitution. The act relates to a subject within the undoubted powers of the legislature to regulate; it applies to all persons in the same situation; it imposes no conditions which cannot be met; and is made enforcible in the mode usual in like matters, that is, by proceedings in the courts after notice and hearing. It may be true that the act is burdensome, and will prevent many from engaging in this form of traffic who would otherwise engage therein. But this is true of all regulation, and to argue that this act is void for this reason is to argue that any form of regulation is void. These, moreover, are not

questions for the consideration of the courts. With the courts the question is one of power, not one of policy. The courts cannot overthrow statutes enacted by competent authority merely because, in the opinion of the judges, they could or should have been made less rigorous.

The question of the power of legislative bodies to enact regulations of the sort contained in the act in question has been a subject for consideration only recently by a number of courts. These, with practical uniformity, have upheld the power. *Ex parte Cardinal, supra; Thielke v. Albee* (Ore.), 153 Pac. 793; *Dresser v. Wichita* (Kan.), 153 Pac. 1194; *Greene v. City of San Antonio* (Tex. Civ. App.), 178 S. W. 6; *Ex parte Sullivan, supra; Ex parte Dickey* (W. Va.), 85 S. E. 781; *Public Service Commission v. Booth* (App. Div.), 156 N. Y. Supp. 140; *City of Memphis v. State* (Tenn.), 179 S. W. 631; *Nolen v. Riechman*, 225 Fed. 812.

An interesting discussion of kindred questions, although not directly upon the point involved, will be found in the cases of *Memphis St. R. Co. v. Rapid Transit Co.* (Tenn.), 179 S. W. 635, where it was held that the operation of vehicles of the kind here in question. in violation of a regulative statute could be enjoined in equity at the suit of a private individual injuriously affected thereby.

The only case called to our attention which seems to be contrary to the cases cited is *New Orleans v. Le Blanc* (unreported), in which it was held by a divided court that the restriction imposed as to the character of bond required to be furnished is unreasonable and void. For reasons, however, which we have heretofore stated, we are unable to agree with this conclusion.

The judgment appealed from is affirmed.

MORRIS, C. J., MOUNT, CHADWICK, and ELLIS, JJ., concur.