BUCK v. KUYKENDALL, State Director of Public Works.

(District Court, W. D. Washington, S. D. December 7, 1923. Supplemental Opinion, January 7, 1924.)

No. 189.

1. **Highways ☞168—Federal Highway Act does not give carrier for hire vested right to use roads for interstate transportation.**

Act July 11, 1916, as amended by Federal Highway Act Nov. 9, 1921, (Comp. St. Supp. 1923, § 7477¼ et seq.), does not give a common carrier for hire any vested right to use roads built thereunder for interstate transportation of passengers.

2. **Highways ☞165—Extraordinary use of highways as by common carrier of passengers for hire, subject to state regulation.**

The use of highways within a state by a common carrier of passengers for hire is not the ordinary public use for which highways are built and is subject to reasonable regulation by the state.

3. **Constitutional law ☞62—Legislature may delegate power to department to make regulations.**

A state Legislature may delegate power to a department of the state to make regulations for the use of highways, subject to review by the courts.

4. **Highways ☞165—That highways are "post roads" does not deprive state of power to regulate use.**

That all public roads and highways are declared post routes by Act March 1, 1884 (Comp. St. § 7457), does not deprive the state of its police power to regulate their use, by vehicles moving in interstate as well as intrastate travel.

5. **Monopolies ☞6—Power to grant or withhold franchise does not create unlawful monopoly.**

The power of a state to grant a franchise to whom it will is not a monopoly, against law or public policy.

Supplemental Opinion.

6. **Commerce ☞10—State has power to control use of highways until Congress acts.**

A state has control of its highways, and the state power continues, where the subject is peculiarly of local concern, until Congress acts, and by its valid interposition limits the exercise of local authority.

7. **Commerce ☞10—State may regulate use of highway by common carriers, in absence of legislation by Congress.**

A common carrier for hire has no right to use a state highway, though doing an interstate business, and such use is a privilege which may be

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

regulated by the state, in the absence of legislation by Congress, and may be denied, where existing lines afford the public adequate service.

In Equity. Suit by A. J. Buck against E. V. Kuykendall, Director of Public Works of the State of Washington. On motion for preliminary injunction. Denied.

The plaintiff, a citizen of the state of Washington, seeks to restrain the defendant, director of public works of the state of Washington, from interfering with his operation of a line of motor vehicles between Portland, Or., and Seattle, Wash., travel wholly interstate. He alleges that the Act of Congress of July 11, 1916, as amended November 9, 1921 (Comp. St. Supp. 1923, § 7477¼ et seq.), extending aid to states in the construction of rural post roads, and the acceptance of such aid by the Legislature of the state, vested in the plaintiff the right to use such highway as a thoroughfare; that he has obtained from the state of Oregon permission to operate a line from Portland to the Washington-Oregon state line at Vancouver; that he has applied to the defendant, as director of public works of the state, for a certificate of necessity and permission to operate his automobile bus line over the public highways of the state of Washington. Such certificate of necessity, and permission to operate said line, have been denied. The plaintiff further alleges that the defendant has granted certificates to operate to other transportation companies, one from Seattle to Tacoma, on the Pacific Highway, another from Tacoma to Olympia, on said Pacific Highway, and another from Olympia to Kelso, on said Pacific Highway, and that a certificate has been issued in Oregon to the Camas Stage Company, a Washington corporation, to operate between Kelso, Wash., and Portland, Or., over the Pacific Highway; that there is no permission granted to operate a through passenger line from Portland to Seattle over said Pacific Highway; that the business is wholly interstate; that the plaintiff expects to use private terminals at Portland and Seattle, and does not expect to use the Pacific Highway, a public thoroughfare, for the taking on or discharging of passengers. He also states that the fare he expects to charge is $5.60 one way; that the present fare over the separate lines are now operating is $6.85, and alleges that the Act approved March 17, 1921 (chapter 111, p. 338, Session Laws 1921), "An act providing for the additional supervision and regulation of the transportation of persons and property for compensation over any public highway by motor-propelled vehicle, * * *" is unconstitutional. It contravenes the Fourteenth Amendment to the Constitution and the commerce clause (article 1, § 8), and that such act of the defendant has created and will continue to create a monopoly in interstate commerce upon said Pacific Highway in the operation of motor vehicles between the cities of Seattle and Tacoma, Wash., and Portland, Or. Plaintiff states that he has complied with all other motor vehicle laws and regulations of the state. The question before the court is whether or not the defendant shall be restrained.

W. R. Crawford, of Seattle, Wash., for plaintiff.

John H. Dunbar, Atty. Gen., and Raymond W. Clifford, and E. W. Anderson, Asst. Attys. Gen., all of the State of Washington, for defendant.

Before GILBERT, Circuit Judge, and CUSHMAN and NETERER, District Judges.

NETERER, District Judge (after stating the facts as above). A like issue was presented to this court, as it is now constituted, in Interstate Motor Transit Co. v. Kuykendall, 284 Fed. 882. But for the earnestness manifested by counsel for the plaintiff, who was also attorney for the plaintiff in the named case, we would rest this issue upon what was there said.

[1] It is asserted that the Act of July 11, 1916, supra, gave to the plaintiff a vested right to use this highway by reason of the contribution to the construction thereof by the United States and the declaration by Congress that the highway is a "post road." Section 2 of the act (Comp. St. § 7477b), supra, says:

"That for the purposes of this act the term 'rural post road' shall be construed to mean any public road over which the United States mails now are or may hereafter be transported, *excluding every street and road in a place having a population*, as shown by the latest available * * * census, of *2,500 or more*, except that portion of any such street or road along which the houses average more than 200 feet apart."

The court judicially knows that Seattle, Tacoma, Olympia, Chehalis, Centralia, and Vancouver are upon the route sought by the plaintiff, and each contains a population in excess of 2,500. By no stretch of the imagination could the plaintiff, by virtue of the provisions of the act of 1916, supra, assert any interest in the excepted roads and streets, and his assertion of vested right in any portion of the highway is absolutely baseless.

The Act of November 9, 1921, 42 Stat. 212, amending Act of July 11, 1916, supra (Comp. St. Supp. 1923, § 7477¼ et seq.), explains the general scheme of road construction and provides for co-operative construction and reconstruction of certain systems of highways within the state, the projects upon which expenditures shall be made to be approved by the Secretary of Agriculture in such a manner as will expedite the completion of an adequate system of highways interstate in character. The state shall designate a system not to exceed 7 per cent. of its total highway mileage which shall receive federal aid, which are to be divided into primary or interstate highways and secondary or intercounty highways. Before any project shall be approved by the Secretary of Agriculture, such states shall make provision for said funds required each year of such state for the construction, reconstruction, and maintenance of all federal aid highways within the state, the funds to be under the direct control of the state highway department, and the duty is imposed upon the state to maintain the highways. Section 18, Act Nov. 9, 1921, supra (Comp. St. Supp. 1923, § 7477¼q), provides:

"That the Secretary of Agriculture shall prescribe and promulgate all needful rules and regulations for the carrying out of the provisions of this act, including such recommendations to the Congress and the state highway departments as he may deem necessary for preserving and protecting the highways and insuring the safety of traffic thereon."

The Congress has not legislated with relation to the use of highways, to the construction of which the United States contributed, other than as provided by section 18, supra, and if recommendations have been made by the Secretary of Agriculture to the state highway department, the presumption is that such recommendations have been carried out, nothing appearing to the contrary.

[2] It is asserted that the provisions of the Act of March 17, 1921, supra, are inoperative as to plaintiff. In Dent v. Oregon City, 211 Pac. 909 (106 Or. 122), the court said:

"The right to use the public highways of the state by the ordinary and usual means of transportation is common to all members of the public without distinction, and extends to those engaged in the business of carrying passengers or freight for hire by such ordinary and usual means of transportation, as well as to individuals pursuing a strictly private business, subject to the power of the state, by legislative enactment, to impose reasonable and impartial regulations upon such use, which power may be delegated by the Legislature to the governing bodies of municipal corporations."

The Oregon court cites Jitney Bus Ass'n v. Wilkes-Barre, 256 Pa. 462, 100 Atl. 954, where the court said:

"Regulation is not to be carried to the extent of prohibition."

The Supreme Court of Washington, in Hadfield v. Lundin, 98 Wash. 657, 168 Pac. 516, L. R. A. 1918B, 909, Ann. Cas. 1918C, 942, said:

"The streets and highways belong to the public. They are built and maintained at public expense for the use of the general public in the ordinary and customary manner. The state, and the city as an arm of the state, has absolute control of the streets in the interest of the public. No private individual or corporation has a right to the use of the streets in the prosecution of the business of a common carrier for private gain without the consent of the state, nor except upon the terms and conditions prescribed by the state or municipality, as the case may be."

In State v. Seattle Taxicab & Transfer Co., 90 Wash. 416, 156 Pac. 837, the court said:

"Highways are constructed primarily as a convenient passageway for all the people, and no one has an absolute right to use them for his own private gain, even though such use be to carry over them people who desire the service."

In Allen v. Bellingham, 95 Wash. 12, 163 Pac. 18:

"But the use to which the appellant proposes putting the streets is not the ordinary or customary use, but a special one. He purposes using them for the transportation of passengers for hire, a use for which they are not primarily constructed."

In State ex rel. Schafer v. Spokane, 109 Wash. 360, 186 Pac. 864, and Northern Pac. Ry. Co. v. Schoenfeldt, 123 Wash. 579, 213 Pac. 26, the Supreme Court of Washington reaffirmed what it said in the cases cited. To the extent of the state of Washington's intrastate control of its highways by legislative act, as construed by its highest court, this court is bound; no constitutional right intervening.

The state has full power to regulate extraordinary use of its streets and highways by common carriers. Interstate Motor Transit Co. v. Kuykendall, supra; Northern Pac. Ry. Co. v. Schoenfeldt, 123 Wash. 579, 213 Pac. 26; Davis v. Mass., 167 U. S. 43, 17 Sup. Ct. 731, 42 L. Ed. 71. Public highways are subject to the police powers of the state. Hendrick v. Maryland, 235 U. S. 610, 35 Sup. Ct. 140, 59 L. Ed. 385. A state by legislative act may, under the police power, perform the double function of reasonable regulation of business and raising revenue by a privilege or license fee (Bradley v. City of Richmond, 227 U. S. 477, 33 Sup. Ct. 318, 57 L. Ed. 603; Camas Stage Co. v. Kozer, 104 Or. 600, 209 Pac. 95, 25 A. L. R. 27; Kane v. New Jersey, 242 U. S. 160, 37 Sup. Ct. 30, 61 L. Ed. 222), and is subject to no limitations save those of the due process and equal protection

clauses of the Fourteenth Amendment (Gundling v. Chicago, 177 U. S. 183, 20 Sup. Ct. 633, 44 L. Ed. 725). The exercise of the police power is a continuing right and may meet the ever-changing conditions and necessities of the public. Lane v. Whitaker (D. C.) 275 Fed. 476; Schoenfeldt v. City of Seattle (D. C.) 265 Fed. 726; McGlothern et al. v. Seattle, 116 Wash. 331, 199 Pac. 457.

[3] The state Legislature has a right to delegate to the department of public works the right to determine to what use the highways shall be applied, subject to review by the courts. Davis v. Mass., 167 U. S. 43, 17 Sup. Ct. 731, 42 L. Ed. 71; Wilson v. Eureka City, 173 U. S. 32, 19 Sup. Ct. 317, 43 L. Ed. 603; Ex parte Kollock, 165 U. S. 526, 17 Sup. Ct. 444, 41 L. Ed. 813; Bradley v. City of Richmond, supra; section 18, Act Nov. 9, 1921, supra; Dent v. Oregon City, supra.

The objection to the Act of March 17, 1921, supra, because of requirements for the safety of passengers, is answered by the Supreme Court in the Second Employers' Liability Cases, Mondou v. N. Y., N. H. & H. R. Co., 223 U. S. 50, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44, where the court held that any measure which would impel the carrier to avoid or prevent negligent acts would be a proper regulation of commerce. "Safety of traffic" (Act Nov. 9, 1921, supra) must be determined by capacity of the highway, amount of travel, skill of driver, responsibility of operator, and demands to use the highway for ordinary uses as distinguished from extraordinary uses, such as a carrier for hire. The Supreme Court of Rhode Island, in Gizzarelli v. Presbrey, 117 Atl. 359, said:

"Authority to use the public highways as a common carrier of passengers for hire is not a right belonging to the individual, but is in the nature of a privilege. * * * Due consideration for the safety of the public requires that a careful selection should be made of the individuals to whom authority is given to use the public highways as carriers of passengers for hire."

The state may not under the guise of regulation arbitrarily prohibit the use of the highway to the plaintiff. Such issue, however, is not before the court, as the plaintiff has not complied with any provisions of the challenged act and at bar announced that he did not propose to comply with the provisions of the act, for the reason that he had a right paramount to its provisions. When the plaintiff disposes himself in harmony with the reasonable provisions of the act and is denied permission to operate, the courts are open to grant such relief as may be warranted by the law and facts. Interstate Motor Transit Co. v. Kuykendall, supra; Vandalia R. R. v. Public Service Com. 242 U. S. 255, 37 Sup. Ct. 93, 61 L. Ed. 276.

[4] We might rest the decision here, but in view of the argument will say that while the Act of June 8, 1872 (section 7456, Comp. St.), provides that all waters, canals, roads, etc., over which mail is carried and letter carrier routes established in a city or town, and all railroads in operation, are declared "post roads," yet such fact does not deprive the state of the police power thereof. In Commonwealth v. Closson, 229 Mass. 329, 118 N. E. 653, L. R. A. 1918C, 939, a mail carrier failed to comply with municipal regulations and was arrested. The court said:

"While undoubtedly they are post roads under Act Cong. March 1, 1884, c. 9, enacting that 'all public roads and highways while kept up and maintained as such are hereby declared to be post routes' (U. S. Comp. St. 1916, § 7457), and whoever knowingly and willfully obstructs or retards 'the passage of the mail, or any carriage, * * * driver, or carrier, * * *' is upon conviction subject to fine, or imprisonment, or both, by Rev. Sts. U. S. § 3995, Act of March 4, 1909, c. 321, § 201, 35 Stat. 1127 (Comp. St. 1916, § 10371), yet the ways remain public ways laid out and maintained by the commonwealth, which has the exclusive power not only of alteration, and of discontinuance, but to make and enforce reasonable regulations for their use. Nor do the facilities thereby afforded for transportation of the mails confer extraordinary rights upon mail carriers to use the ways as they please, or necessarily, or impliedly 'do away with the power of supervision and control inherent in the state. Commonwealth y. Breakwater Co., 214 Mass. 10, 100 N. E. 1034; Postal Telegraph Cable Co. v. Chicopee, 207 Mass. 341, 350, 93 N. E. 927, 32 L. R. A. (N. S.) 997; Dickey v. Turnpike Co., 7 Dana (Ky.) 113; Searight v. Stokes, 3 How. 151, 11 L. Ed. 537; Price v. Pennsylvania R. R., 113 U. S. 221, 5 Sup. Ct. 427, 28 L. Ed. 980; St. Louis v. Western Union Telegraph Co., 148 U. S. 92, 13 Sup. Ct. 485, 37 L. Ed. 380; Martin v. Pittsburg & Lake Erie R. R., 203 U. S. 284, 27 Sup. Ct. 100, 51 L. Ed. 184, 8 Ann. Cas. 87."

As was said in Interstate Motor Transit Co. v. Kuykendall, supra, the act challenged does not seek to regulate interstate commerce. It expressly disclaims such purpose. It seeks to regulate operation over the public highway for which the state is spending many millions of dollars for construction and maintenance. If one concern can establish a terminal across the state line and operate over the highways in this state without regulation, it is reasonable to presume that others will do likewise, and added confusion would arise, which would be foreign to the intended ordinary use of such highways and to the concluding thought of section 18, Act of November 9, 1921, supra, "to insure the safety of public travel," the burden of which rests upon the state, and might jeopardize life, limb, and property of the private citizen of the state attempting to use the highway. Citizens of the state have a right to the enjoyment of their highways and the use of the same must be regulated so that all persons enjoying the privilege may not be subject to injury or death. As was said by the Supreme Court in Hendrick v. Maryland, supra:

"In the absence of national legislation covering the subject a state may rightfully prescribe uniform regulations necessary for public safety and order in respect to the operation upon its highways of all motor bus vehicles—those moving in interstate commerce as well as others. * * * This is but an exercise of the police power uniformly recognized as belonging to the states and essential to the preservation of the health, safety and comfort of their citizens; and it does not constitute a direct and material burden on interstate commerce. * * * The amount of the charges and the method of collection are primarily for determination by the state itself; and so long as they are reasonable and are fixed according to some uniform, fair, and practical standard they constitute no burden on interstate commerce. * * *"

The Supreme Court of Oregon, in Camas Stage Co. v. Kozer, 104 Or. 600, 607, 209 Pac. 95, 97 (25 A. L. R. 27) after quoting section 8, art. 1, of the Constitution, said:

"Congress has exercised the power granted it in relation to interstate commerce in a variety of acts, but it has passed no statute that in any way inhibits the exaction by the state of the fees in question by way of compensation from the plaintiff for the privilege of driving its motor cars over the

highways of this state. State laws may affect interstate commerce without conflicting with the constitutional provision appealed to."

[5] Nor is the power to grant a franchise to whom it will a monopoly against law or public policy. Cooley's Constitutional Limitations (7th Ed.) 564; Haddad v. State, 23 Ariz. 105, 201 Pac. 847; People v. Willcox, 207 N. Y. 86, 100 N. E. 705, 45 L. R. A. (N. S.) 629; Utilities Commission v. Garviloch, 54 Utah, 406, 181 Pac. 272; Hadfield v. Lundin, 98 Wash. 657, 168 Pac. 516, L. R. A. 1918B, 909, Ann. Cas. 1918C, 942; Allen v. Bellingham, 95 Wash. 12, 163 Pac. 18. Nor does the Fourteenth Amendment create any right in a citizen to use the public property in defiance of the laws of the state. Davis v. Mass., supra; Lutz v. New Orleans (D. C.) 235 Fed. 978; Dent v. Oregon City, supra.

What has been said precludes the necessity of discussing the question of tolls. We may add, however, that the Supreme Court in St. Louis v. Western Union Tel. Co., 148 U. S. 92, 13 Sup. Ct. 485, 37 L. Ed. 380, and in Western Union Tel. Co. v. Richmond, 224 U. S. 160, 32 Sup. Ct. 449, 56 L. Ed. 710, held exemption from payment of toll shall not grant unrestricted right to use public property, and in St. Louis v. Western Union Tel. Co., supra, the court said:

"It is a misconception, however, to suppose that the franchise or privilege granted by the act of 1866 carries with it the unrestricted right to appropriate the public property of a state."

In Kane v. New Jersey, 242 U. S. 160, 37 Sup. Ct. 30, 61 L. Ed. 222, Justice Brandeis for the court, said:

"It is clearly within the discretion of the state to determine whether [or not] the compensation for the use of its highways by automobiles shall be determined by way of a fee, payable annually or semiannually, or by a toll based on mileage or otherwise."

From no viewpoint from which the issue can be approached can the plaintiff assert the right contended for. The interlocutory injunction is denied.

NOTE.—Other cases of interest, but not pertinent to the issue before the court, are: Gas Co. v. Hallanan State Tax Com'r, 257 U. S. 277, 42 Sup. Ct. 105, 66 L. Ed. 234; Eureka Pipe Line Co. v. Hallanan, State Tax Com'r, 257 U. S. 265, 42 Sup. Ct. 101, 66 L. Ed. 227; Lemke v. Farmers' Grain Co., 258 U. S. 50, 42 Sup. Ct. 244, 60 L. Ed. 458; Fifth Ave. Coach Co. v. New York, 221 U. S. 467, 31 Sup. Ct. 709, 55 L. Ed. 815; Pullman Co. v. Kansas, 216 U. S. 56, 30 Sup. Ct. 232, 54 L. Ed. 378; State v. Great Northern Express Co., 80 Wash. 309, 141 Pac. 757.

### Supplemental Opinion.

Before RUDKIN, Circuit Judge, and CUSHMAN and NETERER, District Judges.

NETERER, District Judge. On December 7, 1923, this court denied an interlocutory injunction on plaintiff's application. Upon that application it did not appear that the plaintiff had complied with all of the laws of Washington with relation to the operation of motor

vehicles on public highways, and it was stated at bar that the plaintiff declined to so comply. In deciding the case the court said:

"The state may not, under the guise of regulation, arbitrarily prohibit the use of the highway to the plaintiff. Such issue, however, is not before the court, as the plaintiff has not complied with any of the provisions of the challenged act, and at bar announced that he did not propose to comply with the provisions of the act, for the reason that he had a right paramount to its provisions. When the plaintiff disposes himself in harmony with the reasonable provisions of the act, and is denied permission to operate, the courts are open to grant such relief as may be warranted by the law and facts."

Thereafter the plaintiff was granted permission to file an amended complaint, in which he states that he has complied with all of the provisions of the laws of the state of Washington, and at bar asserts that he is willing to comply with all of the laws of the state and the rules and regulations of the department of public works of the state, and further states that the defendant refused to grant said certificate or license to the plaintiff on the sole ground that the owners of four certificates operating between different termini could, by interchanging passengers at common termini, engage in interstate commerce between Seattle, Wash., and Portland, Or., and would furnish, together with the railroads operating between said points, adequate transportation, and, further, that the plaintiff had not shown sufficient financial ability to warrant the director in issuing a certificate to engage in said interstate commerce, so, if it were granted, the plaintiff might not be able to operate; that the plaintiff had complied with all the provisions of chapter 111 in so far as he had been permitted so to do by the defendant, and that he was ready, willing, and able, financially and otherwise, to comply with all the provisions of said law, and that he offered so to do.

An interlocutory injunction is asked. In response to the show-cause order the defendants filed an affidavit, which is not denied, setting out a copy of the order of adjudication of the department of public works of Washington upon the application of the plaintiff for a certificate of convenience and necessity, in which the department found that the plaintiff was not, prior to January 13, 1921, operating as an auto transportation company over the proposed route, and was entitled to a certificate of public convenience and necessity solely upon the ground of public convenience and necessity, and further found that the Northern Pacific Railway Company, the Great Northern Railway Company, and the Oregon-Washington Railroad & Navigation Company, through joint agreement, operate and maintain a rail line between Seattle and Tacoma, Wash., and Portland, Or., carrying freight, passengers, express, and mail between said points, and to all intermediate points proposed to be served by said applicant, and that said railways operate six passenger and express trains daily from Seattle to Portland, and six passenger trains and express trains daily from Portland to Seattle, leaving both termini at reasonable and convenient hours of the day and night, thereby furnishing to the traveling public first-class, comfortable, convenient, and expeditious service; that, in connection with the passenger service furnished by the railroads, they operate sleeping cars and dining cars, and care for the needs and comfort of travelers

upon said lines. A reasonable number of passenger, express, and mail trains adequately serve the needs and convenience of the intermediate points. It was found by the department that the applicant proposed to operate over the Pacific Highway, a main north and south state road; that said state highway practically parallels the railway lines above mentioned for the entire distance from Seattle to Portland, and passes through all the intermediate points above mentioned; that all points along the said Pacific Highway from Seattle to the Columbia river and Portland, Or., through which said applicants and each of them propose to pass, and the only route proposed by said applicants, was already served by other auto transportation companies, all operating under certificates of public convenience and necessity heretofore granted, said auto transportation companies having provided adequate terminal facilities, including waiting rooms and comfort stations for passengers and garages for the inspection and repair of busses; that said auto transportation companies now have their schedules so co-ordinated as to provide a daily service between Seattle and Portland; that "a person may leave Seattle in the morning and by connecting carriers arrive in Portland the same day, and vice versa"; that such service is reasonable and adequate, and entirely sufficient to care for interstate travel at the present time.

Said carriers testified at the hearing before the director of public works, as disclosed by the record, that they were willing to provide additional through service between Seattle and Portland at any time said department of public works should so direct, and that, if public convenience should require such additional service, these carriers should be entitled to an opportunity to furnish it. The findings further state that A. J. Buck proposes to furnish service from Seattle and other points heretofore mentioned to Portland, making two trips per day each way. The trip from Seattle to Portland requires about nine hours running time, and it would be necessary to make stops approximately at the terminal points of the present transportation companies to permit passengers to eat, visit comfort stations, and to permit inspection and repair of the auto busses; that it would be necessary to furnish at these points adequate facilities such as waiting rooms, comfort stations, etc., for the passengers, and garages for repairs upon auto busses. The expense of this duplication of facilities and service would undoubtedly in time be reflected in increased charges to the traveling public. The testimony at the hearing did not show that these applicants or either of them had made adequate arrangements for any of these facilities; that the testimony did not show that said applicants or either of them were possessed of financial ability to successfully undertake the operation of such a venture. It affirmatively appeared, according to the findings of said department of public works, that both A. J. Buck and the Interstate Motor Transit Company were practically without means, and were depending for finances upon the promises of other parties, which promises were vague and conjectural, and not shown to be enforceable; that public convenience and necessity did not require the operation of the service sought or proposed to be given by the applicants or either of them, and it was therefore ordered that the plaintiff's application for certificate of public convenience and

necessity to operate an auto transportation in furnishing passenger and express service between the points heretofore indicated, be denied.

With this application were consolidated other applications, and parties appeared as follows, at the hearing:

Albert J. Buck—D. V. Halverstadt, of Guie & Halverstadt, attorneys, Seattle.

Interstate Motor Transit Co.—W. R. Crawford, attorney, Seattle.

Park Auto Transportation Company—Thos. R. Murphine, attorney, Seattle.

Thompson & Smith Transportation Company—Thos. M. Vance, attorney, Olympia.

Puget Sound Electric Ry. Co.—C. E. Howard, attorney, Bellingham.

Chicago, Milwaukee & St. Paul Railway Company and American Railway Express Company—L. B. Da Ponte, attorney, Seattle.

Oregon & Washington Railroad & Navigation Company—W. A. Robbins, attorney, Portland.

Great Northern Railway Company—Thomas Balmer and A. J. Clynch, attorneys, Seattle.

A protest against the granting of a certificate of convenience and necessity to the plaintiff was filed by the following concerns with the department of public works: Park Auto Transportation Company, Thompson & Smith Transportation Company, Northwest Transportation Company, Comas Stage Company, Chicago, Milwaukee & St. Paul Railway Company, Northern Pacific Railway Company, Great Northern Railway Company, Oregon-Washington Railroad & Navigation Company, American Railway Express Company, Tenino Citizens' Club, Puyallup Commercial Club, Centralia Chamber of Commerce, Tacoma Chamber of Commerce, and Puget Sound Electric Railway.

Every issue now presented has been disposed of in Interstate Motor Transit Co. v. Kuykendall (D. C.) 284 Fed 882, and cases cited, and by the decision in this cause filed December 7, 1923, and cases cited, except whether under the guise of regulation, the defendant arbitrarily prohibits the use of the highway to the plaintiff.

[6] The state of Washington has control of its highways (cases above cited), and the state power continues, where the subject is peculiarly of local concern, until Congress acts and by its valid interposition limits the exercise of local authority (Minn. Rate Cases, 230 U. S. 352, 33 Sup. Ct. 729, 57 L. Ed. 1511, 48 L. R. A. [N. S.] 1151, Ann. Cas. 1916A, 18; Penn. Gas Co. v. P. S. Com., 252 U. S. 23, 40 Sup. Ct. 279, 64 L. Ed. 434; Larabee Flour Mills Co., 211 U. S. 612, 29 Sup. Ct. 214, 53 L. Ed. 352). While these cases have relation to intrastate rates, the principle enunciated is peculiarly applicable to the issue here. The challenged law is not designed to regulate interstate commerce. Its purpose is of peculiar local concern, that of promoting safety, convenience, welfare, health, and comfort of the public in the use of highways constructed and maintained at public expense (Northern Pac. Ry. Co. v. Schoenfeldt, 123 Wash. 579, 213 Pac. 26; Interstate Motor Transit Co. v. Kuykendall, supra, and cases cited), which the state may do through its police power (Hendrick v. Md., 235 U. S. 610, 35 Sup. Ct. 140, 59 L. Ed. 385; Kane v. New Jersey, 242 U. S. 160, 37 Sup. Ct. 30, 61 L. Ed. 222).

[7] The plaintiff has no *right* to use the highway as a common carrier for hire. It is only a privilege which may be regulated by the state in the absence of legislation by the Congress, having due consideration for the safety, health, convenience, welfare, and comfort of the traveling public, and includes those traveling in public conveyances and those traveling in private conveyances upon the highway. The record before the court is conclusive that the privilege withheld from the plaintiff was not arbitrarily denied under the guise of regulation. It is not necessary to add or multiply words or phrases. What has been here said, and in the cited cases, is conclusive.

The interlocutory injunction is denied.

Appended are excerpts from the decision of the department of public works of Washington:

The California Railroad Commission, in Re Wilson & Co., P. U. R. 1920C, 639, said: "The evidence in this proceeding does not warrant the commission granting the order herein sought, for the reason that there is no showing that existing lines are unable to furnish transportation by automobile stage over the route herein sought; and if a through route and joint rate is desired by the public, and existing stage lines cannot themselves agree on an adjustment of schedules and rates which will make possible a through route and joint rate between the points sought to be served by applicant, complaint to the commission that a through route and joint rate is necessary will receive investigation, and an order of the commission will issue, based on the evidence adduced at a public hearing. The remedy for the adjustment of conditions which may not be desired by the public is not the establishment of a competing line, thereby dividing the traffic to the extent that existing authorized lines are unable to render the character of service demanded by the public and required by the regulations of this commission."

The New York Public Service Commission, in Re Graves, P. U. R. 1920E, 131, said: "It has been lately held by the California Railroad Commission, in Re F. A. Wilson & Co., P. U. R. 1920C, 635, decided February 11, 1920, that a certificate to operate an auto stage service will not be granted for the purpose of affording through service between designated points where existing lines render adequate service between intermediate points. This, I think, is consistent and entirely in line with the practice of this commission to discourage competition where existing lines are rendering adequate service, and the position is not changed by the fact that the proposed line in question asks to render a through service where such service may be availed of only by using a succession of established carriers. In this, as in other cases, competition, not demanded to serve a public necessity, will tend to the demoralization and perhaps destruction of the facilities now enjoyed, and thus, in the end, work to the disadvantage, and not the convenience, of the public"

The Illinois Commerce Com., in Re T. L. Clark Truck Co., P. U. R. 1923A, 328, said: "Under such conditions this commission will not deliberately authorize the establishment of a directly competing motor vehicle line when the evidence shows that the localities involved are being served in a reasonably adequate manner, and that the intrusion of a competing line would seriously impair the ability of the railway line to render improved service commensurate with the needs and demands of the community, industries, and persons served, and would operate to the loss, detriment, and damage of the railway."

And in Re Austin Bros. Transfer Co., P. U. R. 1923C, 223, the Illinois Commerce Commission said: "The commission further finds that in passing upon and determining the question of the issuance of a certificate of convenience and necessity to a motor bus line authorizing it to engage in the transportation of passengers and baggage for hire, or in passing upon the granting of a certificate of convenience and necessity to one of two competing motor bus lines, both of which propose to engage in such business over substantially

the same route, it is important and essential that the applicant shall have such a financial responsibility, such an operating experience and such a guaranty of sufficient business as to warrant a successful operation of a permanent motor bus enterprise, and that the persons interested in the operation of such motor bus lines have such an experience in motor bus operation and such a general business experience and ability and officers of such a general business experience and ability that it will assure to the Commission that if operation of a motor bus line is commenced under a certificate of convenience and necessity, it will become a permanent part of the transportation system of the state, and particularly of the community through which it proposes to operate. The commission believes that the temporary operation of any transportation system within a community, whether it be in the form of a motor bus line or in some other form, which does not possess the certainty and security of developing into a permanent operation, and which lacks these particular features which are herein described with reference to business ability of the utility and of its officers, is not a public convenience and necessity and that without proof of such facts a utility does not possess the composite parts necessary to so serve the public as to satisfy public convenience and necessity, and that in such instances the application made for a certificate of convenience and necessity should be denied."

And the same commission, in Re O. L. BROMLEY, P. U. R. 1923A, 616, said: "A part of the route proposed to be traversed by petitioner's motor vehicles parallels the street railway system in the city of Decatur and the granting of a certificate of convenience and necessity to the petitioner herein, if the route traversed is parallel with the street railway system, creates dual service the necessity for which is not apparent upon this record. The record fails to show the inadequacy of the present facilities of the street railway service. It will always be true that the more service rendered, the greater convenience to the public, yet the duplicating of service necessarily means a greater cost and such duplicate service will not be authorized unless substantial justice and a necessity for additional transportation service is manifest."